UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHERINE BAKER, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>SAVE MART SUPERMARKETS,<br><br>    Defendant. | Case No. 22-cv-04645-WHO<br><br>**ORDER DENYING MOTION TO DISMISS**<br><br>Re: Dkt. No. 25 |

Defendant Save Mart Supermarkets ("Save Mart") moves to dismiss a class action complaint filed by Katherine Baker, Jose Luna, Edgar Popke, and Denny Wraske (collectively, "the plaintiffs"), former employees of the grocery store chain who allege that Save Mart breached its fiduciary duty under the Employee Retirement Income Security Act of 1974 ("ERISA") by misrepresenting the medical benefits provided to non-union retirees. The plaintiffs have plausibly alleged the remediable wrong that Save Mart breached its fiduciary duty of loyalty when it made two misrepresentations: (1) that the plaintiffs' non-union benefits would be as good or better than those of their union counterparts, and (2) that if the plaintiffs retired by December 31, 2017, they would retain a certain benefit for the life of the retiree. The plaintiffs have also plausibly shown that they may be entitled to appropriate equitable relief in the form of reformation and surcharge. Finally, the statute of limitations poses no issue, as the plaintiffs filed their claim within three years of receiving actual notice of the alleged breach when Save Mart announced it would terminate the benefit at issue in April 2022. Save Mart's motion is DENIED.

## BACKGROUND

Baker, Luna, Popke, and Wraske worked for Save Mart for 28, 33, 39, and 46 years, respectively. First Am. Compl. ("FAC") [Dkt. No. 24] ¶ 6. Each worked in a non-union role by

the end of their careers with the grocery store chain. *See id.* ¶¶ 4-5.

The Save Mart Select Retiree Health Benefit Plan ("the Plan") provides health care benefits to eligible non-union retirees and their spouses. *Id*. ¶ 18. Beginning in 2016, Save Mart modified the Plan to provide funding to a Health Reimbursement Account ("the HRA benefit") in lieu of premium contributions. *Id*. ¶ 19. According to the FAC, the HRA benefit was a monthly $500 contribution to an HRA for each eligible employee, plus $500 for their spouse. *Id*. The retired employee and their spouse could then use the money accrued in their HRA accounts to pay for certain qualifying medical expenses. *Id*. The FAC alleges that Save Mart's human resources department repeatedly told employees that the HRA benefit could accumulate until the retiree's death. *Id*. ¶¶ 19, 21.

The FAC also alleges that Save Mart repeatedly represented that it would provide non-union employees with benefits—including retirement benefits—that were "as good as or better than" those provided to union employees. *Id*. ¶ 22. According to the FAC, Save Mart said this to convince employees not to join the union. *Id*.

When Save Mart amended the Plan to implement the HRA benefit in 2016, it told retirement-eligible employees that if they retired before December 31, 2017, they would be able to keep the HRA benefit for their spouses for the retiree's life—but if they retired after that date, the spousal benefit would not be available. *Id*. ¶¶ 1, 33. The plaintiffs all retired on or before that date—earlier than they had planned—to retain the HRA spousal benefit. *See id*. ¶ 5.

In April 2022, Save Mart announced that it would terminate the HRA benefit as of June 2022, which the FAC alleges "eliminated all retiree medical benefits for non-union retirees." *See id.* ¶¶ 1, 37. Save Mart allegedly told these retirees that after June, no medical expenses would be covered and the funds accumulated in the HRA accounts would revert to Save Mart. *Id*. ¶ 37. According to the FAC, the Plan terms allowed Save Mart to "modify or terminate the Plan at any time for any reason." *See id*. ¶¶ 21, 36.[1] As a result of this policy change, the plaintiffs allege

---

[1] Save Mart requests judicial notice of two documents: (1) a copy of the Save Mart Select Retiree Health Benefit Plan that was effective January 1, 2012, and (2) a copy of the 2016 Save Mart Select Health Reimbursement Arrangement Summary Plan Description. RJN [Dkt. No. 26], Exs. A, B. The plaintiffs oppose the requests, citing in part their concerns about the "authenticity and

2

1  that they and class members—other non-union retirees and their beneficiaries—lost their health
2  benefits.  *Id.* ¶ 39.
3      The plaintiffs filed their initial class action complaint in August 2022, followed by the
4  FAC in November.  Dkt. Nos. 1, 24.  The FAC asserts a single claim: breach of fiduciary duty
5  under ERISA.  FAC ¶¶ 87-92.  Save Mart then moved to dismiss.  Dkt. No. 25.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  There must be "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level."  *See Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff.  *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *See In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).

Claims sounding in fraud are subject to the heightened pleading standard of Federal Rule

---

completeness" of the documents.  Dkt. No. 30.  I will DENY the requests for now.  Not only do the plaintiffs question the accuracy of the documents, but the plaintiffs do not rely on any Plan documents in asserting their claim (which is based on Save Mart's alleged misrepresentations about union and non-union benefits, and the duration of the HRA benefit), meaning these documents were not relevant to my analysis of its plausibility.  *See* Fed. R. Evid. 201(b).  At most, the modification and termination clause was relevant, but plaintiffs acknowledge its existence in the FAC.  *See* FAC ¶ 21.

3

of Civil Procedure 9(b), which requires that such claims "state with particularity the circumstances constituting fraud or mistake," including the "who, what, when, where, and how of the misconduct charged." *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation and quotations omitted). "The plaintiff must set forth what is false or misleading about a statement, and why it is false." *Id.* (citation omitted). The allegations must be "specific enough to give defendants notice of the particular misconduct" which is alleged to constitute the fraud charged "so that they can defend against the charge and not just deny that they have done anything wrong." *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (same).

## DISCUSSION

Section 502 of ERISA allows a participant, beneficiary, or fiduciary to bring a civil action "to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan" or "to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3). Under this provision, a plaintiff "must prove both (1) that there is a remediable wrong, i.e., that the plaintiff seeks relief to redress a violation of ERISA or the terms of a plan; and (2) that the relief sought is appropriate equitable relief." *Gabriel v. Alaska Elec. Pension Fund*, 773 F.3d 945, 954 (9th Cir. 2014) (citations and quotations omitted). The FAC alleges that Save Mart breached its fiduciary duties of loyalty and prudence in violation of ERISA, and seeks relief in the form of a surcharge, reformation of the Plan, and an injunction. *See* FAC ¶¶ 87-92; 24:5-9.[2]

### I.   REMEDIABLE WRONG

Save Mart first challenges whether the plaintiffs' ERISA claim plausibly alleges a remediable wrong. Mot. to Dismiss ("MTD") [Dkt. No. 25] 6:21-15:7. It argues that the FAC fails to allege a breach of fiduciary duty because it does not allege: (1) an affirmative misrepresentation under either Rule 9(b) or Rule 8(a); (2) actionable omissions; and (3) that the

---

[2] Although the FAC mentions a fiduciary's "duties of loyalty and prudence," and alleges that "Save Mart breached these duties" by making the misrepresentations, the plaintiffs later deny that they alleged a breach of the duty of prudence. *See* FAC ¶¶ 89-90; *see also* Oppo. [Dkt. No. 29] 12:3 ("Plaintiffs do not allege that Save Mart breached its duty of prudence."). The plaintiffs should clarify at the next Case Management Conference, scheduled for April 25, 2023, whether they continue to pursue this theory of liability.

4

plaintiffs relied upon Save Mart's statements before 2017. *See id.*

### A. Affirmative Misrepresentation

ERISA requires a fiduciary to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A). A fiduciary breaches this duty of loyalty if it "mislead[s] plan participants or misrepresent[s] the terms or administration of a plan." *Guenther v. Lockheed Martin Corp.*, 972 F.3d 1043, 1051 (9th Cir. 2020) (quoting *Barker v. Am. Mobil Power Corp.*, 64 F.3d 1397, 1403 (9th Cir. 1995)). To prevail on a breach of fiduciary duty claim based on a misrepresentation, a plaintiff must show: (1) the defendant's status as an ERISA fiduciary acting as a fiduciary; (2) a misrepresentation by the defendant; (3) the materiality of that misrepresentation; and (4) detrimental reliance by the plaintiff on the misrepresentation. *RJ v. Cigna Health & Life Ins. Co.*, --- F. Supp. 3d ----, 2022 WL 4021890, at *11 (N.D. Cal. Sept. 2, 2022) (citation omitted).[3]

The parties initially dispute which pleading standard applies. Save Mart contends that because misrepresentation sounds in fraud, the claim must meet Rule 9(b)'s heightened standard. MTD at 6:25-27. The plaintiffs argue that only Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief," must be satisfied. Oppo. at 8:20-23; *see also* Fed. R. Civ. P. 8(a). The claim is plausibly alleged under either standard.

Beginning with Rule 9(b), Save Mart argues that plaintiffs have not alleged "the falsity of

---

[3] At the end of its motion, Save Mart argues that it was not acting as a fiduciary when it terminated the HRA benefit, because doing so was a business function. MTD at 21:6-27. However, as discussed next, the plaintiffs' claim is based on the alleged misrepresentations by Save Mart that led them to believe that their benefits as non-union employees would be as good or better than those for union employees, and that if they retired by December 31, 2017, they would retain the HRA benefit for life. *See* FAC ¶ 1. Even if Save Mart was not acting as a fiduciary when it terminated the Plan (a question that will be answered with discovery), the plaintiffs' claim does not necessarily depend on that termination. Therefore, this argument from Save Mart is not dispositive. The same is true for its final argument, which is that the plaintiffs' claim is a "disguised claim for benefits" that must be denied because the termination of the HRA benefit was fully consistent with the Plan. MTD at 22:1-17. The plaintiffs assert a claim based on an alleged breach of fiduciary duty, not the denial of benefits.

the alleged misrepresentation with particularity" because they did not allege facts about the union and non-union employee health plans that sufficiently show that Save Mart "actionably misrepresented the nature of Plan benefits when it purportedly stated that Plan benefits would be as good or better than union benefits." MTD at 8:3-7. According to Save Mart, the plaintiffs instead "relied on their own subjective interpretations of vague alleged statements to extrapolate an implied promise that Save Mart would never modify or terminate Plan benefits." *Id*. at 8:7-9.

I disagree. The FAC lays out the relevant difference between the union and non-union benefits: that medical benefits for union retirees "were and are more secure than those offered by the Plan." FAC ¶ 3. The FAC then alleges that unlike the Plan, the union's retiree medical benefit program does not allow Save Mart to unilaterally eliminate benefits or take back money that funds those benefits. *See id*.; *see also* ¶ 4 ("Save Mart's representations to its workers that it would provide benefits as good or better than the union's benefits were false. Save Mart's retiree medical benefits for non-union employees were in fact far less secure and allowed Save Mart to eliminate the benefits at any time, at Save Mart's sole discretion."). If the alleged misstatement (the "what") is that Save Mart would provide non-union employees benefits as good as or better than those provided to union employees, the FAC has sufficiently alleged "how" that statement is false.

The FAC also alleges who made these statements, when they made them, and where. For example, the FAC alleges that when a new Save Mart store opened or the company learned that one may be unionizing, it sent human resources ("HR") professionals and managers to discuss this purported benefits difference. *See id.* ¶¶ 25-26. Although not needed on a motion to dismiss, these allegations are supported with declarations from former HR representatives who spoke about the messaging. *See, e.g.*, *id*., Kennedy Decl. ¶¶ 13-14. The FAC further alleges that similar statements were made in anti-union pamphlets distributed to employees. *See, e.g.*, FAC ¶ 2 (citing Ex. A).

Save Mart also overlooks the second alleged misstatement: that it told the plaintiffs that if they retired before December 31, 2017, they could retain the HRA benefit for themselves and their spouses for the retiree's life. *See* FAC ¶¶ 1, 34-36. Again, the FAC sufficiently alleges the who,

what, where, when, and how of the alleged fraud.

The FAC alleges that Save Mart HR representatives and other managers (the who) told retirement-eligible employees that if they retired before December 31, 2017, they would retain the HRA benefit for their spouses for the duration of the retiree's life (the what) in letters and at meetings and presentations (the where) during a push in 2016 and 2017 (the when) to encourage retirements. *Id.* ¶¶ 33-34, 57-58, 65-67, 73-75, 82. The FAC also alleges how this representation was false or misleading: because Save Mart could terminate the HRA benefit at any time, including for employees who retired before the December 31, 2017, deadline. *Id*. ¶ 36. If the plaintiffs' fraud-based claim is subject to Rule 9(b), they have alleged two misrepresentations with sufficient particularity for the claim to proceed.

Rule 8(a)'s more lenient standard is satisfied too. The plaintiffs have sufficiently alleged two types of misrepresentations by Save Mart that plausibly support their breach of fiduciary duty claim. Many of Save Mart's attacks under Rule 8(a) raise factual disputes that will prove out at a later stage of litigation, including whether it was reasonable for the plaintiffs to believe that Save Mart would always provide beneficiaries with specific benefits and how certain language on pamphlets describing the Plan should be interpreted. *See* MTD at 9:27-10:23. And whether Save Mart's alleged statements were consistent with the language of the Plan documents does not undermine the plaintiffs' claim, for reasons I next explain.

### B. Actionable Omissions

Save Mart next argues that plaintiffs fail to allege actionable omissions implicating the fiduciary duty to disclose. MTD at 11:18-13:2. It contends that the plaintiffs cannot allege an omission because (1) they received a Plan document and Summary Plan Description ("SPD"), which disclosed that Save Mart could modify or terminate the Plan at any time, and (2) they fail to allege Save Mart promised them additional information or updates on the Plan. *See id*. at 12:3-21.

Neither point is compelling. "[W]hen an employer communicates with its employees about a plan, fiduciary responsibilities come into play." *Bins v. Exxon Co. U.S.A.*, 220 F.3d 1042, 1053 (9th Cir. 2000). The Ninth Circuit has held that the duty of loyalty encompasses a duty "to provide thorough and accurate information explaining" an option "offered to entice employees to

7

retire." *See Farr v. U.S. W. Commc'ns, Inc.*, 151 F.3d 908, 915 (9th Cir. 1998), *amended by* 179 F.3d 1252 (July 15, 1999). And "when a participant asks a fiduciary a question about his benefits, the fiduciary has a duty to completely and accurately answer the question"—a duty that cannot be avoided based on the technicality of the questions at hand. *Harris v. Life Ins. Co. of N. Am.*, 419 F. Supp. 3d 1169, 1173-74 (N.D. Cal. 2019) (citations and quotations omitted).

As the plaintiffs note, the FAC alleges various examples of Save Mart's assertions that the HRA benefit would last for the life of the retiree, including in response to questions from employees. Oppo. at 15:9-12 (citing in part FAC ¶¶ 2, 33, 58, 67). For example, the FAC alleges that when the Plan was amended in 2016, Save Mart told employees that if they retired by December 31, 2017, they could retain the HRA benefit for their spouses for the retiree's life, and did so in an effort to "persuade eligible employees to retire." FAC ¶ 33. This implicates Save Mart's duty to provide thorough and accurate information under *Farr*. So do the questions about the HRA benefit allegedly asked to Save Mart human resources workers by employees. *See id*. ¶¶ 58 (alleging that Baker attended an HR presentation where employees asked "many questions about the HRA changes"), 67 (alleging that Luna spoke to an HR representative "to ask questions about his retirement benefits" and was told that as long as he retired by December 31, 2017, "both he and his spouse would keep their HRA benefit for the duration of Mr. Luna's life"). The plaintiffs plausibly contend that these answers were not complete nor accurate because they did not include that the HRA benefit could be terminated at any time. *See id*. ¶ 36.

The plaintiffs have sufficiently alleged that Save Mart's representations contained omissions about the HRA benefit that support their claim for breach of fiduciary duty.

### C.     Reliance

Save Mart next contends that the plaintiffs fail to allege detrimental reliance on its alleged misrepresentations. MTD at 13:3-15:7. The plaintiffs argue that they need not plead detrimental reliance but that even if they must, they have plausibly done so. Oppo. at 16:1-17:3. *RJ* states that a breach of fiduciary duty claim based on a misrepresentation requires a showing of detrimental reliance. *See* 2022 WL 4021890, at *11. Assuming that it does, the plaintiffs have still sufficiently pleaded detrimental reliance on at least some of the misstatements.

8

Save Mart primarily argues that the FAC does not allege that when the plaintiffs accepted management positions that were not eligible for union membership, they did so based on any guarantee of specific benefits. *See* MTD at 13:3-15:7. The plaintiffs respond that they detrimentally relied on Save Mart's representations "by continuing to work at Save Mart at all (and not elsewhere) to accrue the necessary years of service at Save Mart required to earn retiree medical benefits only to have Save Mart refuse to provide those benefits." Oppo. at 16:21-24 (citing FAC ¶ 4).

Save Mart makes a fair point. With one exception, the FAC does not allege that the named plaintiffs relied on statements that non-union benefits would always be as good or better than union benefits when deciding not to join the union. The FAC alleges that Luna, Popke, and Wraske were told or reassured that this was the case, but does not expressly connect the dots between those statements and their decisions to accept or remain in non-union positions. *See* FAC ¶¶ 62-64, 71-72, 79-81. Indeed, it alleges that Popke deferred a promotion to a non-union position "for several years because of the additional hours of work it would require and the young age of his children." *Id.* ¶ 71. Although it alleges that when Popke accepted a promotion, he asked what impact it would have on his benefits and was assured that they "would always be as good as or better than the union's[,]" the FAC does not allege that he relied on this statement in deciding to take the new job. *See id.* Although the FAC makes a conclusory allegation that Save Mart's misrepresentation harmed the plaintiffs "by inducing them to continue working for Save Mart as long as it took to become eligible for benefits under the Plan instead of other employment opportunities," nowhere else does the FAC connect the statement about union versus non-union benefits and these three plaintiffs' decisions to remain working for Save Mart. *See id.* ¶ 4.

The exception is Baker. The FAC alleges that when Baker was approached about becoming a store manager, requiring her to give up her union status, she was "especially concerned about preserving her medical benefits," given her family's medical needs. FAC ¶ 50. Her boss allegedly "assured her that as a non-union manager, her benefits would always be as good as or better than the union's benefits." *Id.* The FAC then alleges that "[o]n the basis of this representation, Ms. Baker decided to remain in management and give up her union status." *Id.*

9

This clearly alleges reliance on the statement at issue.

Moreover, the FAC plausibly alleges detrimental reliance on the *other* alleged misstatement: that if the plaintiffs retired by December 31, 2017, they would preserve their spouses' HRA benefits for life. The FAC alleges that each of the named plaintiffs relied on this statement in deciding to retire when they did. *See id*. ¶¶ 57-60, 66-68, 75-77, 82-85.

Although the FAC does not expressly allege that Luna, Popke, and Wraske relied on Save Mart's statements about the union benefits as compared to non-union benefits in deciding to accept non-union jobs, it plausibly alleges that Baker did. It also plausibly alleges that each of the named plaintiffs relied on Save Mart's representations about the HRA benefit in deciding to retire when they did. Reliance is sufficiently pleaded and the plaintiffs have plausibly pleaded a remediable wrong under ERISA.

## II.  APPROPRIATE EQUITABLE RELIEF

Save Mart challenges the plausibility of plaintiffs' claim to "appropriate [forms of] equitable relief"—reformation, surcharge, and an injunction—under ERISA. MTD at 15:8-19:13. The Supreme Court has explained that "appropriate equitable relief refers to a remedy traditionally viewed as equitable." *See Gabriel*, 773 F.3d at 954 (citations and quotations omitted). Three types of traditional equitable remedies may be available under section 1132(a)(3) of ERISA: the reformation of plan terms in order to remedy false or misleading information, equitable estoppel, and surcharge. *See id*. at 954-57.

### A.  Reformation

"The power to reform contracts is available only in the event of mistake or fraud." *Gabriel*, 773 F.3d at 955 (citations omitted). If fraud is alleged, "a plaintiff may obtain reformation when either (1) a trust was procured by wrongful conduct, such as undue influence, duress, or fraud, or (2) a party's assent to a contract was induced by the other party's misrepresentations as to the terms or effect of the contract and he was justified in relying on the other party's misrepresentations." *Id*. (cleaned up).

As explained earlier, the plaintiffs plead sufficient facts supporting a fraud-based breach of fiduciary duty claim under both Rules 9(b) and 8(a). Save Mart contends that the plaintiffs have

10

not alleged that the Plan itself contained terms induced by fraud, which it argues is the kind of fraud that could warrant reformation. *See* MTD at 15:23-16:2. But Save Mart ignores the test for reformation under a fraud theory, where reformation is available when: "(1) a trust was procured by wrongful conduct, such as undue influence, duress, or fraud, *or* (2) a party's assent to a contract was induced by the other party's misrepresentations as to the terms or effect of the contract and he was justified in relying on the other party's misrepresentations.'" *See Gabriel*, 773 F.3d at 955 (cleaned up and emphasis added). As alleged, the plaintiffs agreed to retire before December 31, 2017, based on Save Mart's misrepresentation about the duration of the HRA benefit. *See* FAC ¶ 5. They seek to reform the Plan in part "to reflect Save Mart's repeated promise that retiree medical benefits, including the HRA benefit for retirees and their spouses specifically, would last until the death of the retiree." *Id.* ¶ 92. The plaintiffs may continue to pursue reformation.[4]

### B. Surcharge

"Appropriate equitable relief" also includes surcharge: "monetary compensation for a loss resulting from a trustee's breach of duty, or to prevent the trustee's unjust enrichment." *Gabriel*, 773 F.3d at 957 (cleaned up). "Under a breach of duty theory, the beneficiary can pursue the remedy that will put the beneficiary in the position he or she would have attained but for the trustee's breach." *Gomo v. NetApp, Inc.*, No. 17-CV-02990-BLF, 2022 WL 16972492, at *5 (N.D. Cal. Nov. 16, 2022) (citing *Gabriel*, 773 F.3d at 958) (cleaned up). "Under an unjust enrichment theory, a trustee (or a fiduciary) who gains a benefit by breaching his or her duty must return that benefit to the beneficiary." *Id.* (same). Save Mart argues that the plaintiffs cannot pursue a surcharge because they do not plausibly plead that they were actually harmed by Save Mart's breach of its fiduciary duty or that Save Mart was unjustly enriched as a result. MTD at 18:1-19:13.

The FAC alleges that the plaintiffs were harmed by Save Mart's breach in two ways. First, it alleges that, at least with respect to Baker, she decided to give up her union status based on the

---

[4] The parties also debate whether the plaintiffs allege enough facts in the FAC to plausibly claim reformation under a theory of mistake. *See* MTD at 16:3-24; *see also* Oppo. at 19:21-21:8. Because they have alleged enough to plausibly support their entitlement to reformation under a theory of fraud, I need not address these points.

11

misrepresentation that "her benefits would always be as good or better than the union's benefits." FAC ¶ 50. It is reasonable to infer, then, that she was harmed when the HRA benefit was terminated, as it was a non-union benefit that she was eligible for because she gave up her union status. Moreover, the FAC alleges that each of the named plaintiffs retired earlier than planned based on the second alleged misrepresentation about the duration of the HRA benefit, and thus, at minimum, lost income and employee benefits that they otherwise would have earned by working. *See id*. ¶¶ 58-61, 66-69, 75-78, 82-86.

The plaintiffs have also plausibly alleged that Save Mart was unjustly enriched by its alleged breach of fiduciary duty, at least in the form of the money it saved when it induced the plaintiffs to retire early. *See* Oppo. at 19:1-12; *see also* FAC ¶ 2 (alleging that Save Mart's motive for misrepresenting the Plan terms was in part "to save money"). Though at this stage of the litigation there is no evidence to determine whether Save Mart was indeed better off having induced plaintiffs to retire, the plaintiffs' allegations plausibly suggest that the offer of early retirements to maintain lifetime spousal benefits were for the purpose of improving Save Mart's financial position. *See, e.g.*, FAC ¶ 33.

Because the plaintiffs have plausibly shown they are entitled to appropriate equitable relief in the form of reformation or a surcharge, they have plausibly stated their claim.[5]

### III. STATUTE OF LIMITATIONS

Finally, Save Mart argues that the plaintiffs' sole cause of action is time-barred. MTD at 19:14-21:5. There are three relevant time periods for ERISA claims, depending on the "triggering event." *See Intel Corp. Inv. Pol'y Comm. v. Sulyma*, 140 S. Ct. 768, 774 (2020). The Supreme Court recently provided guidance on these time periods, in relevant part:

---

[5] The FAC includes a request for an injunction "requiring Save Mart to administer the Plan with respect to plaintiffs and the Class and Subclass in a manner consistent with the terms of the Plan in existence prior to the elimination of the HRA benefit in 2022." FAC at 24:5-9. Save Mart challenges this on several grounds, including that it "already administered (and is administering) the Plan consistent with the pre-termination terms, which expressly permitted Save Mart to terminate Plan benefits at any time." MTD at 17:4-8 (citing FAC ¶ 31). The plaintiffs do not respond or maintain their request for an injunction in their opposition. *See generally* Oppo. Given this and the contrary allegations in the FAC (which acknowledges the provision stating that Save Mart "has the right to modify or terminate the Plan at any time for any reason"), I agree that the plaintiffs have not shown that this form of relief is available. *See* FAC ¶ 21.

> The first begins when the breach occurs. Specifically, under § 1113(1), suit must be filed within six years of "the date of the last action which constituted a part of the breach or violation" or, in cases of breach by omission, "the latest date on which the fiduciary could have cured the breach or violation." We have referred to § 1113(1) as a statute of repose, which "effect[s] a legislative judgment that a defendant should be free from liability after the legislatively determined period of time."
>
> The second period, which accelerates the filing deadline, begins when the plaintiff gains "actual knowledge" of the breach. Under § 1113(2), suit must be filed within three years of "the earliest date on which the plaintiff had actual knowledge of the breach or violation." Section 1113(2) is a statute of limitations, which "encourage[s] plaintiffs to pursue diligent prosecution of known claims."
>
> The third period, which applies "in the case of fraud or concealment," begins when the plaintiff discovers the alleged breach. In such cases, suit must be filed within six years of "the date of discovery."

*Sulyma*, 140 S. Ct at 774 (citations omitted). The Ninth Circuit has held that the six-year exception for fraud "only applies when a defendant has taken steps to hide its breach of fiduciary duty," and in such cases a plaintiff "must establish affirmative conduct upon the part of the defendant which would, under the circumstances of the case, lead a reasonable person to believe that he did not have a claim for relief." *Guenther*, 972 F.3d at 1057 (citations omitted). Save Mart focuses on the second and third time bars. MTD at 19:14-21:5.

At the least, the plaintiffs' ERISA claim is timely under the three-year statute of limitations. Save Mart contends that plaintiffs had actual knowledge of its unilateral ability to change and terminate the Plan as early as 2009 and no later than 2016, based on prior modifications to the Plan. MTD at 20:11-21:5; *see also* 4:9-10 (describing allegation that in 2009, Save Mart stopped paying 100% of active and retired employees' group premium costs); 20:21-21:1 (describing allegation that Save Mart modified the plan in 2016 to provide the HRA funding in lieu of premium contributions). The plaintiffs argue that "these actions were merely modifications to the nature of the benefits" and that "neither gave plaintiffs 'actual knowledge' that Save Mart could terminate retiree health benefits altogether." Oppo. at 22:10-12.

The 2009 and 2016 changes might indicate Save Mart's ability to modify Plan benefits, but the alleged breach relies on misrepresentations about how long those benefits would last—and it is plausible that neither of the changes would inform the plaintiffs that their benefits could be

13

1  unilaterally terminated. This is further supported by the plaintiffs' decision to retire before
2  December 31, 2017, to maintain their medical benefits for life, from which one could reasonably
3  infer that the plaintiffs were not aware then that the HRA benefit could be terminated at any time.
4  As the Supreme Court wrote in *Sulyma*, "if a plaintiff is not aware of a fact, he does not have
5  'actual knowledge' of that fact however close at hand the fact might be." 140 S. Ct. at 777. As
6  alleged, the plaintiffs did not have actual knowledge of Save Mart's ability to eliminate the HRA
7  benefit until April 2022, when Save Mart announced that it was doing so. *See* FAC ¶¶ 37-38.[6]
8  They filed this suit in August of the same year—well within the three-year statute of limitations.
9  *See* Dkt. No. 1. As alleged, the plaintiffs' claim is timely.

## CONCLUSION

The motion to dismiss is DENIED.

**IT IS SO ORDERED.**

Dated: April 7, 2023

William H. Orrick
United States District Judge

---

[6] Save Mart also argues that the plaintiffs' awareness of the earlier Plan changes made them "willfully blind" to its ability to terminate the Plan. *See* MTD at 20:18-21:5; Reply [Dkt. No. 31] 2:16-4:16. Although "evidence of 'willful blindness'" may "support[] a finding of 'actual knowledge,'" Save Mart has not shown willful blindness at this point. *See Sulyma*, 140 S. Ct. at 779. A willfully blind party "is one who takes deliberate actions to avoid confirming a high probability" that a fact exists and "who can almost be said to have actually known" that fact. *See Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769 (2011). Even if the previous Plan modifications caused the plaintiffs to believe that their benefits could be unilaterally terminated, nothing in the FAC indicates that they took deliberate actions to avoid confirming such. Save Mart's argument may carry more weight as this case develops and discovery sheds further light on the facts. For now, willful blindness does not stand in the way of the plaintiffs' claim.

14