Anne B. Shaver (CA Bar No. 255928)
Michelle A. Lamy (CA Bar No. 308174)
Benjamin A. Trouvais (CA Bar No. 353034)
LIEFF CABRASER HEIMANN & BERNSTEIN LLP
275 Battery St., 29th Floor
San Francisco, CA 94111
Phone: (415) 956-1000
Fax: (415) 956-1008

James P. Keenley (CA Bar No. 253106)
Emily A. Bolt (CA Bar No. 253109)
BOLT KEENLEY KIM LLP
2855 Telegraph Ave., Suite 517
Berkeley, CA 94705
Phone: (510) 225-0696
Fax: (510) 225-1095

Matthew J. Matern (CA Bar No. 159798)
Mikael H. Stahle (CA Bar No. 182599)
Erin R. Hutchins (CA Bar No. 346557)
MATERN LAW GROUP, PC
2101 E. El Segundo Blvd., Suite 403
El Segundo, CA 90245
Phone: (310) 531-1900
Fax: (310) 531-1901

*Attorneys for Plaintiffs and the Proposed Class*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KATHERINE BAKER, JOSÉ LUNA, EDGAR POPKE, and DENNY G. WRASKE, Jr., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SAVE MART SUPERMARKETS and SAVE MART SELECT RETIREE HEALTH BENEFIT PLAN,<br><br>Defendants. | Case No.: 3:22-cv-4645-AMO<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES ISO UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT UNDER FEDERAL RULE OF CIVIL PROCEDURE 23**<br><br>**Hearing**<br>**Date/Time: August 7, 2025 at 2:00pm**<br>**Location: Courtroom 10** |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.   BACKGROUND .................................................................................................. 2

    A.    Pleadings ................................................................................................... 2

    B.    Discovery .................................................................................................. 3

    C.    Motion for Class Certification ................................................................. 3

    D.    Settlement Negotiations ........................................................................... 4

    E.    Summary of Key Settlement Terms ......................................................... 4

        1.    Class Definition ............................................................................. 4

        2.    Consideration ................................................................................ 4

        3.    Settlement Administrator ............................................................. 4

        4.    Notice and Administration ........................................................... 5

        5.    Plan of Distribution ...................................................................... 6

        6.    Attorneys' Fees, Costs, and Service Awards ............................... 7

        7.    Tax Treatment .............................................................................. 7

        8.    Additional Provisions ................................................................... 7

III.  LEGAL STANDARD .......................................................................................... 8

IV.   ARGUMENT ...................................................................................................... 9

    A.    The Settlement Class Meets the Criteria for Certification. ..................... 9

        1.    The Requirements of Rule 23(a) Are Satisfied. .......................... 9

        2.    Class Certification is Appropriate Under Rule 23(b)(3). ........... 11

        3.    The Court Should Appoint Settlement Counsel Under Rule 23(g)(3). ....................................................................................... 13

    B.    The Settlement Is Fundamentally Fair, Reasonable, and Adequate. ...... 13

        1.    The *Churchill* Factors Are Satisfied. ......................................... 13

        2.    The Rule 23(e)(2) Requirements Are Met. ................................. 19

        3.    The Northern District Guidance Supports Approval. ................. 21

V.    CONCLUSION ................................................................................................. 25

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Anthem, Inc. Data Breach Litig.*,
   327 F.R.D. 299 (N.D. Cal. 2018) ............................................................... 17, 20

*In re Apple Inc. Device Performance Litig.*,
   50 F.4th 769 (9th Cir. 2022) ............................................................................ 24

*Barr v. SelectBlinds LLC*,
   Case No. 2:22-cv-08326-SPG-PD, 2024 WL 5162609 (C.D. Cal. Mar. 4, 2024) .................. 20

*Blenko v. Cabell Huntington Hosp., Inc.*,
   No. 3:21-0315, 2022 WL 3229968 (S.D.W.V. Aug. 10, 2022) ............................... 25

*Campa v. Bd. of Trustees of Sheet Metal Workers Pension Plan of N. Cal.*,
   Case No. 3:23-cv-01760-MMC (N.D. Cal. July 20, 2024) ....................................... 22

*Carlotti v. ASUS Comput. Int'l*,
   No. 18-cv-3369-DMR, 2019 WL 6134910 (N.D. Cal. Nov. 19, 2019) ....................... 18, 19

*Churchill Village, L.L.C. v. General Electric*,
   361 F.3d 566 (9th Cir. 2004) ........................................................................ 8, 13

*In re Computer Scis. Corp. ERISA Litig.*,
   No. CV 08–02398 SJO, 2008 WL 7527872 (C.D. Cal. Dec. 29, 2008) ..................... 10, 11, 12

*Cottle v. Plaid Inc.*,
   340 F.R.D. 356 (N.D. Cal. 2021) ..............................................................*passim*

*Ellis v. Costco Wholesale Corp.*,
   285 F.R.D. 492 (N.D. Cal. 2012) ...................................................................... 9

*Foster v. Adams & Assocs., Inc.*,
   Case No. 18-cv-02723-JSC, 2022 WL 425559 (N.D. Cal. Feb. 11, 2022) .................. 16, 25

*Fremont General Corp. Litig*,
   No. 2:07-cv-02693-JHN-FFMx, 2010 WL 3168088 (C.D. Cal. Apr. 15, 2010) ............... 12

*Hernandez v. Dutton Ranch Corp.*,
   Case No.: 19-cv-00817-EMC, 2021 WL 5053476 (N.D. Cal. Sept. 10, 2021) ............... 20

*Hurtado v. Rainbow Disposal Co., Inc.*,
   Case No. 8:17-cv-01605-JLS-DFM, 2019 WL 1771797
   (C.D. Cal. Apr. 22, 2019) ....................................................................... 10, 11, 25

*In re Hyundai & Kia Fuel Economy Litig.*,
   926 F.3d 539 (9th Cir. 2019) ........................................................................... 12

*Int'l Longshore & Warehouse Union, Local 142 v. C. Brewer & Co., Ltd.*,
   Civil No. CV 06–00260 SOM LEK, 2007 WL 4145228
   (D. Haw. Nov. 20, 2007) ................................................................................. 17

*Inter-Modal Rail Emps. Ass'n v. Atchison, Topeka, and Santa Fe Ry. Co.*,
   520 U.S. 510 (1997) ...................................................................................... 14

*Kanawi v. Bechtel Corp.*,
   254 F.R.D. 102 (N.D. Cal. 2008) ..................................................................... 11

## **TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Lane v. Facebook, Inc.*,
696 F.3d 811 (9th Cir. 2012) ................................................................................ 24

*Lusby v. Gamestop Inc.*,
297 F.R.D. 400 (N.D. Cal. 2013) ............................................................................ 8

*Marshall v. Northrop Grummen Corp.*,
Case No. 16-CV-6794 AB, 2020 WL 5668935 (C.D. Cal. Sept. 18, 2020) ............................. 24

*Miguel-Sanchez v. Mesa Packing, LLC*,
Case No. 20-cv-00823-VKD, 2021 WL 1736807 (N.D. Cal. May 3, 2021) ............................. 8

*Moyle v. Liberty Mut. Ret. Benefit Plan*,
Case No. 10cv2179 DMS (BLM), 2012 WL 13149097
(S.D. Cal. Apr. 10, 2012) ........................................................................ 9, 10, 11, 12

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004) ...................................................................... 16, 17

*Officers for Justice v. Civil Serv. Com'n of City and Cnty. of San Francisco*,
688 F.2d 615 (9th Cir. 1982) ................................................................................ 14

*Osberg v. Foot Locker, Inc.*,
No. 07-1358 (KBF), 2014 WL 5796686 (S.D.N.Y. Sept. 24, 2014) ...................................... 10

*Parsons v. Ryan*,
754 F.3d 657 (9th Cir. 2014) ................................................................................ 10

*Pfeifer v. Wawa, Inc.*,
No. 16-497, 2018 WL 4203880 (E.D. Pa. Aug. 31, 2018) ............................................... 25

*Rodriguez v. W. Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) ................................................................................ 24

*Ruiz Torres v. Mercer Canyons Inc.*,
835 F.3d 1125 (9th Cir. 2016) .......................................................................... 9, 12

*In re Syncor ERISA Litig.*,
516 F.3d 1095 (9th Cir. 2008) ............................................................................... 8

*In re TracFone Unlimited Serv. Plan Litig.*,
112 F. Supp. 3d 993 (N.D. Cal. 2015) ..................................................................... 13

*Vaquero v. Ashley Furniture Indus., Inc.*,
824 F.3d 1150 (9th Cir. 2016) ............................................................................... 9

*In re Volkswagen "Clean Diesel" Litig.*,
229 F. Supp. 3d 1052 (N.D. Cal. 2017) .................................................................... 15

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liability Litig.*,
895 F.3d 597 (9th Cir. 2018) ................................................................................. 8

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ...................................................................................... 9, 10

**Statutes**

29 U.S.C. § 1132(a)(1)(B) ................................................................................... 10

29 U.S.C. § 1321(a)(1) ...................................................................................... 10

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

ERISA, 28 U.S.C. §§ 1001, *et seq.* ............................................................................... 2

ERISA § 404(a)(1) ........................................................................................................ 10

ERISA § 502(a)(1)(B)................................................................................................... 10

**Court Rules**

Fed. R. Civ. P. 23(a)(1) ................................................................................................. 9

Fed. R. Civ. P. 23(a)(1)-(4)........................................................................................... 9

Fed. R. Civ. P. 23(e)(2) ............................................................................................ 8, 19

Fed. R. Civ. P. 23(g)(3)................................................................................................ 13

**Other Authorities**

4 William B. Rubenstein et al., *Newberg and Rubenstein on Class Actions* § 13:49
    (6th ed. 2022).......................................................................................................... 17

**NOTICE OF MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on August 7, 2025 at 2:00pm, or as soon as the matter may be heard before the Honorable Araceli Martínez-Olguín (or a United States Magistrate Judge) of the United States District Court for the Northern District of California, located at the Phillip Burton Federal Building and United States Courthouse, 450 Golden Gate Avenue, Courtroom 10, San Francisco, CA 94102, Plaintiffs Katherine Baker, José Luna, Edgar Popke, and Denny G. Wraske, Jr. ("Plaintiffs") will and hereby do move for an Order pursuant to Rule 23(e) of the Federal Rules of Civil Procedure: (i) preliminarily approving the proposed Settlement Agreement dated April 18, 2025 between Plaintiffs and Defendants Save Mart Supermarkets and Save Mart Select Retiree Health Benefit Plan (together, "Defendant" or "Save Mart"); (ii) finding that the prerequisites for class certification under Rule 23 are likely to be satisfied; (iii) approving the form and manner of Notice to the Settlement Class; (iv) approving the proposed Plan of Distribution; (v) approving the selection of the Settlement Administrator; (vi) appointing Plaintiffs' counsel as Settlement Class Counsel; and (vii) scheduling a Final Approval Hearing.

The parties have consented to proceed before a United States Magistrate Judge. *See* ECF Nos. 113, 114. To the extent referral to a Magistrate Judge would enable the parties to obtain an earlier hearing date on this motion, Plaintiffs respectfully request that referral.

Plaintiffs' motion is based upon this Notice of Motion, the Memorandum of Points and Authorities set forth below, the Declarations of Anne B. Shaver, James P. Keenley, and Matthew J. Matern, and all exhibits thereto, the Settlement Agreement and all exhibits thereto, the proposed Plan of Distribution, the proposed Notice, the pleadings and records on file in this Action, and other such matters and argument as the Court may consider at the hearing of this Motion.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

After nearly three years of litigation, a day-long mediation, and six months of subsequent settlement negotiations, Plaintiffs, on behalf of themselves and the proposed Settlement Class,

reached a settlement with Save Mart to resolve this litigation.[1] The settlement provides a non-reversionary common fund of $20,545,000 to compensate 666 Settlement Class Members, to whom Plaintiffs allege Save Mart promised lifetime retiree medical benefits.

The parties reached this settlement after years of hard-fought litigation, including Save Mart's motion to dismiss; rigorous discovery that included the exchange of nearly fifteen thousand documents and twenty-six depositions; amendments to Plaintiffs' complaint reflecting that intensive discovery; and the completion of class certification briefing containing hundreds of exhibits and over fifty individual declarations. In addition, Plaintiffs retained an actuary to review Settlement Class Member data and calculate the present value of the retiree health benefits to which Plaintiffs claim the Settlement Class is entitled, which calculations formed the basis of their settlement negotiations. According to Plaintiffs' estimates, the settlement represents a recovery of approximately 46% of the present value of the retiree health benefits. Shaver Decl. ¶ 15. This is an excellent result for the class in light of the stage of the litigation, the litigation risks facing Plaintiffs and the Settlement Class, and Save Mart's current economic status. All of these factors were evaluated by experienced and competent counsel based on the substantial amount of litigation, discovery, and information exchange that informed the parties' negotiations. For purposes of Fed. R. Civ. P. 23(e)(2), the Court may readily find that the settlement represents a fair, reasonable, and adequate resolution to this case and warrants preliminary approval.

## II.    BACKGROUND

### A.    Pleadings

On August 11, 2022, Plaintiffs filed their original Complaint on behalf of themselves and all others similarly situated, alleging that Save Mart violated ERISA, 28 U.S.C. §§ 1001, *et seq.*, by misrepresenting how long non-union retiree medical benefits would last under the Save Mart Select Retiree Health Benefit Plan (the "Plan"). Compl. ¶¶ 20-23, ECF No. 1. Plaintiffs filed their First Amended Complaint ("FAC") on November 22, 2022. ECF No. 24. The FAC added allegations that Save Mart misrepresented that Plan benefits would last until the death of the retiree

---

[1] The Settlement Agreement (or "SA") is attached as Exhibit 1 to the Declaration of Anne B. Shaver in Support of Preliminary Approval ("Shaver Decl."). Unless otherwise noted, capitalized terms have the same meanings as in the Settlement Agreement.

and would always be as good as or better than benefits provided to union employees. FAC ¶¶ 21-26. The FAC also included six exhibits: three documents Plaintiffs had in their possession from Save Mart describing Plan benefits, and three declarations Plaintiffs collected from former Save Mart human resources personnel attesting to the misrepresentations. *See* FAC Exs. A-F, ECF Nos. 24-1 through 24-6.

Save Mart moved to dismiss the FAC. ECF No. 25. Judge Orrick denied Save Mart's motion on April 7, 2023. ECF No. 37 at 14. Plaintiffs filed their Second Amended Complaint ("SAC") on February 27, 2024, adding a new claim based on information obtained through discovery alleging that Save Mart failed to properly terminate the Plan in accordance with its terms. SAC ¶¶ 42-48, ECF No. 70. Save Mart answered the SAC on March 12, 2024. ECF No. 74.

### B.    Discovery

The parties began discovery following the denial of Save Mart's motion to dismiss the FAC. Shaver Decl. ¶ 6. Plaintiffs produced 766 documents (consisting of 3,793 pages) to Save Mart, including some from their spouses; served two document subpoenas on third parties; responded to Save Mart's interrogatories, supplementing their responses twice as discovery uncovered new information; responded to Save Mart's requests for admission; conducted a Rule 30(b)(6) deposition of Save Mart's corporate representative; and noticed another two depositions of Save Mart's employees. *Id.* In connection with their motion for class certification, Plaintiffs procured an additional three HR personnel declarations and forty-six class member declarations. *Id.* ¶¶ 4, 10. Save Mart produced 13,739 documents (110,327 pages) to Plaintiffs; responded to Plaintiffs' first set of interrogatories, supplementing its answers four times; responded to Plaintiffs' second set of interrogatories; and took 25 depositions, including those of the four Plaintiffs, five former Save Mart human resources representatives, and sixteen putative class members. *Id.* ¶ 7.

### C.    Motion for Class Certification

On July 3, 2024, Plaintiffs moved for class certification. ECF No. 79. Save Mart filed its opposition on September 19, 2024, ECF No. 99, and Plaintiffs filed their reply on October 17, 2024, ECF No. 104. The hearing was scheduled for January 9, 2025. ECF No. 105. On January 6, 2025, pursuant to the parties' announcement of a settlement in principle and stipulation, the Court vacated

that hearing, terminated the motion, and stayed the action. ECF No. 109.

### D.    Settlement Negotiations

On November 6, 2024, the parties participated in a full-day mediation with mediator Margaret Levy. *Id.* ¶ 11. Following that mediation session, the parties continued their attempts to reach a settlement under Ms. Levy's supervision. *Id.* ¶ 12. Plaintiffs retained an actuary to calculate Save Mart's estimated liability if Plaintiffs prevailed on all of their claims at trial. *Id.* ¶ 11. Plaintiffs used these calculations to negotiate the Class Settlement Amount with Save Mart. *Id.* The parties reached an agreement-in-principle on January 6, 2025. *Id.* ¶ 13.  Following that, the parties engaged in further discussions and negotiations about the eligibility criteria for membership in the Settlement Class, and Save Mart produced additional data to Plaintiffs, which required Plaintiffs' actuary to run supplemental data analyses. *Id.* ¶ 14. The parties were able to resolve all outstanding issues and executed a full and final settlement agreement on April 18, 2025. *Id.* ¶ 15.

### E.    Summary of Key Settlement Terms

#### 1.    Class Definition

The Settlement Class is: "All people who were participants in the Save Mart Select Retiree Health Benefit Plan as of June 30, 2022, all people who retired and met the Eligibility Criteria at any time on or after April 22, 2022, and all current Save Mart employees who have not yet retired but have otherwise met the Eligibility Criteria." SA § II. The Settlement Class encompasses all non-union employees who worked for Save Mart long enough to qualify for retiree medical benefits (and otherwise met the Plan's eligibility criteria), had those benefits not been discontinued.

#### 2.    Consideration

Save Mart will pay $20,545,000 to a non-reversionary Class Common Fund. SA § III.

#### 3.    Settlement Administrator

Plaintiffs propose that CPT Group, Inc. ("CPT"), an experienced and reputable class action administrator, serve as Settlement Administrator to provide Notice to the Settlement Class and all other services necessary to implement the Settlement. Shaver Decl. ¶ 17. Plaintiffs selected CPT after a competitive bidding process involving three nationally recognized administrators. *Id.*; *see also infra* at p. 22 (detailing bidding). Plaintiffs selected CPT as the Settlement Administrator

because CPT will provide all of the services necessary to administer the Settlement Agreement for the lowest rate, and because Settlement Class Counsel has worked successfully with CPT in the past to administer class action settlements. *Id.* ¶ 17.

### 4.    Notice and Administration

The proposed Notice is attached to the Shaver Declaration as Exhibit 2. Within five days of the Preliminary Approval Order, Save Mart will provide a list of all Settlement Class Members and their contact information to the Settlement Administrator. SA § V.2. Likewise, Plaintiffs will submit to the Settlement Administrator their list of Settlement Class Members who have provided Plaintiffs with their contact information. *Id.* Twenty-one days thereafter, the Settlement Administrator will mail and email the Notice to each Settlement Class Member. *Id.* The Notice to each Settlement Class Member shall include an individualized estimate of their Settlement Share, as calculated according to the Plan of Distribution. *Id.* If any Notice is returned, the Settlement Administrator will either (1) send the Notice to the forwarding address, if one is provided, or (2) attempt to ascertain the intended recipient's current address and, if successful, mail the Notice to that address. *Id.* The parties agree that compliance with these procedures is the best notice practicable under the circumstances. *Id.*

In addition to providing the Notice, the Settlement Administrator will also: (1) respond to questions from Settlement Class Members, (2) maintain a toll-free number for communications with Settlement Class Members and a dedicated website providing information about the Settlement, (3) receive and record any requests for exclusion from or objections to the settlement, (4) calculate and distribute Settlement Shares to Participating Settlement Class Members, (5) distribute Service Awards to the Class Representatives, if any, (6) distribute amounts approved by the Court to Settlement Class Counsel as Attorneys' Fees and Litigation Costs, (7) file required state and federal tax returns and take all other actions required by Article X of the Settlement Agreement, (8) if needed, distribute funds to the *cy pres* recipient, and (9) resolve any disputes raised in connection with an individual's eligibility to participate in the Settlement as a Settlement Class Member or as to the amount of their Settlement Share. *Id.* §§ V.1, VI.2-3. Costs of settlement administration will be paid from the Class Common Fund.

### 5. Plan of Distribution

The Plan of Distribution is attached to the Shaver Declaration as Exhibit 3. As described therein, Settlement Shares are derived from the value of each Class Member's Health Reimbursement Account ("HRA") benefits over the course of their expected lifetime if paid out as a lump sum in present-day dollars. Shaver Decl. Ex. 3 at 1. The HRA benefits included in the calculation are 1) $500 per month up to age 65 and $300 per month thereafter beginning at time of retirement or estimated retirement date; 2) spousal benefits for those who were receiving them at the time Save Mart discontinued HRA contributions; and 3) any unused HRA credits in a Settlement Class Member's HRA account. *Id.* Plaintiffs' actuary calculated these amounts using industry-standard actuarial methods and data, with the relevant factors being each individual's date of birth, date of retirement or estimated retirement date, and mortality risk. *Id.* Each Settlement Class Member's Settlement Share is equal to the present value of their HRA benefits divided by the sum of the present values of all Settlement Class Member's HRA benefits, multiplied by the Net Settlement Fund. *Id.*

The Settlement Administrator will automatically mail checks to each Participating Settlement Class Member within thirty days of the Effective Date without the need for Settlement Class Members to submit a claim. SA § IV.3.c. Each check must be cashed within 180 days. *Id.* Sixty days prior to the check expiration date, the Settlement Administrator will send a reminder postcard to Participating Settlement Class Members who have not cashed their checks and try to contact them by telephone and email. *Id.* If a Settlement Class Member is deceased, his or her Settlement Share will go to his or her designated heirs upon validation of their status. *Id.*

The Settlement Administrator will retain 1% of the Class Common Fund from the initial distribution to resolve, in its discretion, any disputes raised within 180 days as to eligibility to participate in the settlement or as to the amount of a Settlement Share ("Dispute Fund"). If, 180 days following the initial distribution of Settlement Shares there is a remaining balance of more than $150,000 in the Net Settlement Fund and the Dispute Fund, the Settlement Administrator will make a second distribution to all Participating Settlement Class Members who deposited their initial checks, in accordance with the Plan of Distribution. *Id.* If there is a remaining balance 180 after the

second distribution, the Settlement Administrator will distribute the remaining balance to the American Association of Retired Persons ("AARP") as a *cy pres* recipient. *Id.*

### 6. Attorneys' Fees, Costs, and Service Awards

Any court-approved Service Awards, Attorneys' Fees, and Litigation Expenses will be paid from the Class Common Fund. *Id.* § IV.3.a-b. Plaintiffs will seek $25,000 per Plaintiff in Service Awards to recognize the time, effort, and contribution that the Named Plaintiffs made to the litigation. Shaver Decl. ¶ 20. Plaintiffs' counsel will seek reimbursement of their Litigation Costs and up to 30% of the Class Settlement Amount in Attorneys' Fees. *Id.* The Notice distributed to Settlement Class Members includes these details regarding Plaintiffs' forthcoming motion for Service Awards, Attorneys' Fees, and Litigation Expenses, Shaver Decl. Ex. 2 at 4-5, 7-8, which will be filed within twenty-one days of the Notice mailing date, such that Settlement Class Members will have an opportunity to review that request prior to the opt out and objection deadline, SA §§ IV.3.a-b. The Court's ruling on that motion will have no effect on this settlement. *Id.*

### 7. Tax Treatment

The Class Common Fund will be treated as a "Qualified Settlement Fund" under Section 468B of the Revenue Code. SA § VIII. Two-thirds of each Settlement Share will settle claims for benefits owed and will be reduced by payroll taxes and withholdings in accordance with IRS guidance. *Id.* One-third of each Settlement Share will settle the interest portion of the Settlement Class Members' claims and will not be reduced by payroll tax withholding and deductions. *Id.* Any Service Awards will be made without withholding. *Id.* Save Mart will pay the employer's share of taxes and contributions. *Id.*

### 8. Additional Provisions

**Save Mart's Statement.** Save Mart denies any wrongdoing. SA § VI.1.

**Release.** Plaintiffs and Settlement Class Members will release Save Mart from "any and all claims of any kind or nature whatsoever for any losses, damages, or relief of any kind or nature whatsoever, including without limitation any equitable relief, relating to or arising out of the terminability, duration, or quality of Plan benefits, or any allegations contained in the complaint and all amended complaints in this Action." SA § VII.2. Plaintiffs and Settlement Class Members

1    will also explicitly waive the protections of California Civil Code § 1542 (or any like or similar

2    statute or common law doctrine). *Id.* § VII.3.

3    **III.    LEGAL STANDARD**

4      The Ninth Circuit maintains "a strong judicial policy that favors settlements, particularly

5    where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095,

6    1101 (9th Cir. 2008). When parties settle a class action prior to class certification, courts must

7    "ratify both the propriety of the certification and the fairness of the settlement." *In re Volkswagen*

8    *"Clean Diesel" Mktg., Sales Practices, & Prods. Liability Litig.*, 895 F.3d 597, 606 (9th Cir. 2018)

9    (citation omitted). This requires courts to "assess whether a class exists," and if so, to assess

10   "whether the proposed settlement is fundamentally fair, adequate, and reasonable." *Cottle v. Plaid*

11   *Inc.*, 340 F.R.D. 356, 370 (N.D. Cal. 2021) (internal quotation marks and citations omitted).

12     The first inquiry—the propriety of class certification—asks whether the proposed

13   settlement class satisfies the factors for class certification under Federal Rule of Civil Procedure

14   23(a) and (b). For the latter inquiry into the settlement's fairness, courts employ a two-step process.

15   First, courts "conduct[] a preliminary fairness evaluation," or "preliminary approval." *Miguel-*

16   *Sanchez v. Mesa Packing, LLC*, Case No. 20-cv-00823-VKD, 2021 WL 1736807, at *1, 7 (N.D.

17   Cal. May 3, 2021). Preliminary approval "is committed to the sound discretion of the trial judge."

18   *Lusby v. Gamestop Inc.*, 297 F.R.D. 400, 412 (N.D. Cal. 2013) (citation omitted). The court's role

19   at preliminary approval is to determine whether the settlement "falls within the range of possible

20   approval." *Id.* at 413 (citation omitted). Courts in the Ninth Circuit examine two authorities in

21   deciding whether to grant preliminary approval: "(1) the fairness factors set forth in *Churchill*

22   *Village, L.L.C. v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004); and (2) the factors in Rule

23   23(e)(2)." *Cottle*, 340 F.R.D. at 372. Courts in the Northern District of California also consider the

24   District's Procedural Guidance for Class Action Settlements. *Id.* "If the Court preliminarily

25   approves the settlement," the second step is to disseminate notice to the class and hold a "final

26   hearing for approval of the settlement." *Miguel-Sanchez*, 2021 WL 1736807, at *7 (citing *Lusby*,

27   297 F.R.D. at 412; Fed. R. Civ. P. 23(e)(2)).

28

## IV.    ARGUMENT

All of the relevant factors strongly support certification of the Settlement Class and preliminary approval of the Settlement Agreement.

### A.    The Settlement Class Meets the Criteria for Certification.

The Settlement Class must satisfy the four preconditions of Rule 23(a), and one of the bases for certification under Rule 23(b). Fed. R. Civ. P. 23. Plaintiffs contend, and Save Mart does not dispute for settlement purposes, that the Settlement Class meets the requirements for class certification under Rules 23(a) and (b)(3).[2]

#### 1.    The Requirements of Rule 23(a) Are Satisfied.

Under Rule 23(a), a class must satisfy four preconditions: numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a)(1)-(4). Here, the Settlement Class satisfies all four.

**Numerosity.** Under Rule 23(a)(1), numerosity is satisfied if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The Settlement Class consists of 666 members, satisfying numerosity. Shaver Decl. ¶ 16; *Ellis v. Costco Wholesale Corp.*, 285 F.R.D. 492, 506 (N.D. Cal. 2012) ("100 or more plaintiffs leads to a presumption of numerosity").

**Commonality.** "The requirement of 'commonality' means that class members' claims 'must depend upon a common contention' and that the 'common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150, 1153 (9th Cir. 2016) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). "To satisfy Rule 23(a)(2) commonality, even a single common question will do." *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1133 (9th Cir. 2016) (cleaned up).

Plaintiffs' "Benefits Due" claim" alleges that Save Mart failed to properly terminate the Plan benefits according to the relevant procedural requirements, and therefore owes Plan

---

[2] Because the Settlement Class satisfies Rule 23(b)(3)'s more demanding predominance and superiority requirements, the Class would also readily satisfy the requirements of Rules 23(b)(1) and 23(b)(2). *See, e.g.*, *Moyle v. Liberty Mut. Ret. Benefit Plan*, Case No. 10cv2179 DMS (BLM), 2012 WL 13149097, at *10-11 (S.D. Cal. Apr. 10, 2012) (certifying a class under Rule 23(b)(3) and, alternatively, Rule 23(b)(1)).

participants the benefits that Save Mart should have paid from June 2022 to the present pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). SAC ¶¶ 42-48, 100-113. The Benefits Due claim raises a single common liability question: whether Save Mart properly terminated the retiree medical benefits in compliance with Plan terms. This is a question of law, the answer to which cannot vary between Settlement Class Members because it focuses entirely on the conduct of Save Mart. Because the answer to this common question will "drive the resolution of the [claim]," class certification of the Benefits Due Claim is appropriate. *Dukes*, 564 U.S. at 350.

Plaintiffs' "Misrepresentation Claim" alleges that Save Mart breached its fiduciary duty by misrepresenting the terms of the Plan under ERISA § 404(a)(1), 29 U.S.C. § 1321(a)(1). SAC ¶¶ 23-41, 94-99. Specifically, Plaintiffs allege that Save Mart promised its non-union employees that Plan benefits would last for the life of the retiree and would always be as good as or better than the union benefits, when in fact the Plan's terms allowed Save Mart to terminate the benefit at its election. *Id.* The Misrepresentation Claim raises common questions, the answers to which focus on the conduct of Save Mart. "[T]he appropriate focus of a breach of fiduciary duty claim under ERISA is the conduct of the defendants, not the plaintiffs." *In re Computer Scis. Corp. ERISA Litig.*, No. CV 08–02398 SJO (JWJx), 2008 WL 7527872, at *2 (C.D. Cal. Dec. 29, 2008) ("*CSC I*"). First, was Save Mart acting as a fiduciary at the times it characterized the Plan's terms to employees? Second, did Save Mart's statements and omissions misrepresent the Plan's terms? Third, were the misrepresentations material? The answer to all of these questions is binary—yes or no—and all will be answered for every Settlement Class Member in the same way. *See, e.g.*, *Hurtado v. Rainbow Disposal Co., Inc.*, Case No. 8:17-cv-01605-JLS-DFM, 2019 WL 1771797, at *6-7 (C.D. Cal. Apr. 22, 2019); *Moyle*, 2012 WL 13149097, at *3-8; *CSC I*, 2008 WL 7527872, at *2; *Osberg v. Foot Locker, Inc.*, No. 07-1358 (KBF), 2014 WL 5796686, at *3 (S.D.N.Y. Sept. 24, 2014) (collectively, finding commonality satisfied as to these factors and certifying classes in ERISA misrepresentation cases).

**Typicality.** Under Rule 23(a)(3), "representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014). Plaintiffs' claims easily satisfy this standard. Plaintiffs

suffered the same harm as did all Settlement Class Members: Save Mart took away their retiree medical benefits after representing to them that those benefits would last for life. "Plaintiffs' claims are typical of the proposed class because they focus on the conduct of [Save Mart] as to the [Class] as a whole and not on conduct specific to any particular Plaintiff." *Hurtado*, 2019 WL 1771797, at *8; *see also CSC I*, 2008 WL 7527872, at *2 ("[B]ecause the Complaint contains allegations of plan-wide misrepresentations and non-disclosures, which by definition were not individualized, and the class seeks recovery for the Plan as a whole on the basis of these plan-wide misrepresentations and non-disclosures, Plaintiffs' claims are accordingly typical of those of the class as a whole.") (cleaned up); *Moyle*, 2012 WL 13149097, at *8 (same); *Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 110 (N.D. Cal. 2008) (same).

**Adequacy.** Rule 23(a)(4) involves two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Moyle*, 2012 WL 13149097, at *9. Plaintiffs and their counsel meet both requirements. First, Plaintiffs and their counsel have no conflicts of interest with any members of the Settlement Class. Rather, their interests are entirely aligned: Plaintiffs and the Settlement Class share a common interest in maximizing the Class Settlement Amount.

Second, Plaintiffs and Settlement Class Counsel have vigorously prosecuted this action on behalf of the Settlement Class. Plaintiffs consulted extensively with counsel about their claims, reviewed draft complaints, provided input on Rule 26(a) witnesses, helped prepare interrogatory responses, provided documents, testified at depositions, and participated in an all-day mediation and subsequent negotiations. Shaver Decl. ¶ 22. Settlement Class Counsel have extensive experience litigating, trying, and settling class actions, including complex cases arising under ERISA. *See id.* ¶¶ 25-33; Keenley Decl. ¶¶ 2-6; Matern Decl. ¶¶ 4-15. Counsel are well-qualified to represent the Settlement Class, and have shown they will do so vigorously. Adequacy is satisfied.

## 2. Class Certification is Appropriate Under Rule 23(b)(3).

Certification is appropriate under Rule 23(b)(3) where (1) common questions predominate over questions affecting only individual members, and (2) class resolution is superior to other

available methods for the fair and efficient adjudication of claims. Fed. R. Civ. P. 23(b)(3).

**Predominance.** In the context of the predominance inquiry, "an individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof." *Ruiz Torres*, 835 F.3d at 1134 (cleaned up). "Predominance is not, however, a matter of nose counting. . . . It is an assessment of whether [the] proposed classes are sufficiently cohesive to warrant adjudication by representation." *Id*. (cleaned up).

Here, common questions predominate with respect to the Benefits Due Claim. Indeed, the entire claim rises or falls on the common question of whether Save Mart properly terminated the retiree medical benefit. For the Misrepresentation Claim, "common issues predominate over individual issues because Defendants' representations to the putative class were uniform and even reliance and materiality are susceptible to class-wide proof." *Moyle*, 2012 WL 13149097, at *11; *see also CSC I*, 2008 WL 7527872, at *4 (finding that the "overriding common issues" of whether defendants were fiduciaries and whether they breached their fiduciary duties would predominate over any individual questions); *Fremont General Corp. Litig.*, No. 2:07-cv-02693-JHN-FFMx, 2010 WL 3168088, at *7 (C.D. Cal. Apr. 15, 2010) ("As a common nucleus of facts and potential legal remedies involves the conduct Defendants took, or failed to take, in this action, Plaintiffs' claims are generally homogenous and suitable for adjudication by representation.").

**Superiority.** A class action is also a superior method for resolution of this case, measured by (A) the class members' interest in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; and (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum.[3] Fed. R. Civ. P. 23(b)(3). The first factor is met because the cost of litigating a complex case of this kind dwarfs the individual entitlement to relief any individual class member would possess. The second factor is met because there is no other litigation. Shaver

---

[3] The Rule 23(b)(3)(D) factor—the likely difficulties of managing a class action—does not apply in the settlement context. *See In re Hyundai & Kia Fuel Economy Litig.*, 926 F.3d 539, 556-57 (9th Cir. 2019) ("[M]anageability is not a concern in certifying a settlement class where, by definition, there will be no trial.").

Decl. ¶ 21. The third factor is met because concentrating the claims in this District is desirable as Save Mart operates throughout the District and many Settlement Class Members live here. *Id*. Thus, settling this class action case is far superior to litigating hundreds of individual actions.

### 3.    The Court Should Appoint Settlement Counsel Under Rule 23(g)(3).

Rule 23(g)(3) requires the appointment of counsel to represent the Settlement Class. Fed. R. Civ. P. 23(g)(3). Because Settlement Class Counsel have vigorously prosecuted this action on behalf of Plaintiffs and the Settlement Class and are committed to continuing to do so, Shaver Decl. ¶ 3, Plaintiffs respectfully request the Court appoint Lieff Cabraser Heimann & Bernstein, LLP; Bolt Keenley Kim LLP; and Matern Law Group PC as Settlement Class Counsel.

### B.    The Settlement Is Fundamentally Fair, Reasonable, and Adequate.

Because Settlement Class certification is proper, the Court should next assess whether preliminary approval is proper under the *Churchill* factors, Rule 23(e)(2), and the Northern District of California's class action guidance. All factors support preliminary approval here.

### 1.    The *Churchill* Factors Are Satisfied.

According to *Churchill*, the Court should balance the following factors in deciding whether to grant preliminary approval: "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." *Cottle*, 340 F.R.D. at 373 (quoting *Churchill*, 361 F.3d at 575).

***Churchill* Factors 1-3.** "The first three factors are addressed together and require the court to assess the plaintiff's 'likelihood of success on the merits and the range of possible recovery' versus the risks of continued litigation and maintaining class action status through the duration of trial." *Cottle*, 340 F.R.D. at 373 (citation omitted). These factors weigh in favor of approving settlement when the defendant has "plausible defenses that could have ultimately left class members with a reduced or non-existent recovery." *In re TracFone Unlimited Serv. Plan Litig.*, 112 F. Supp. 3d 993, 999 (N.D. Cal. 2015). The Court "need not 'reach any ultimate conclusions

on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements.'" *Cottle*, 340 F.R.D. at 373 (quoting *Officers for Justice v. Civil Serv. Com'n of City and Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)).

Plaintiffs are confident in the strength of their claims, but also recognize the inherent risks of continued litigation and a trial. Absent settlement, Plaintiffs will revive their motion for class certification. The parties will also engage in expert discovery, summary judgment, and pre-trial motion practice. Those motions may take months or years to resolve, and there is no guarantee that Plaintiffs will prevail at all stages; if they do, there will be an appeal, subjecting any wins to uncertainty and delaying finality even further. Further, this case involves an inherently uncertain legal claim that is vulnerable to both legal and factual defenses. Under ERISA, retiree medical benefits are welfare benefits that do not automatically become non-forfeitable vested benefits— that is, an employer can eliminate them at any time, for any reason, unless the governing plan document says otherwise. *Inter-Modal Rail Emps. Ass'n v. Atchison, Topeka, and Santa Fe Ry. Co.*, 520 U.S. 510, 515-16 (1997). Here, the governing Plan document explicitly reserves to Save Mart the right to terminate the benefits. ECF No. 79-59 at SAVEMART00009504. Plaintiffs' Misrepresentation Claim hinges on overcoming this background legal principle by proving that Plan fiduciaries made actionable misrepresentations that were contrary to the Plan terms and further that Plaintiffs and the Class are entitled to appropriate equitable relief for those misrepresentations. Since many of the alleged misrepresentations were verbal, and all were made over decades going back to the early 1980s, proving the necessary legal elements requires the testimony of dozens of witnesses and the resolution of numerous contested legal issues. Such litigation is costly, time consuming, and presents significant risk of adverse outcomes on all issues for all parties.

With regard to the range of possible recovery on the Misrepresentation Claims, Defendants have consistently argued that even if Plaintiffs were to prevail on the issue of whether benefits were promised for the life of the retiree, the specific form and value of benefits provided to retirees had changed significantly over the course of the company's history and could change again. Thus, even if Plaintiffs obtained equitable relief requiring Save Mart to reinstate the retiree medical plan, it

1  nonetheless retained discretion to set the benefit amount and could lower it significantly, down to

2  *de minimus* figures. *See* ECF No. 25 at 22; ECF No. 31 at 12-13. The questions asked of the

3  Plaintiffs, HR witnesses, and Class Members at their depositions reflected this line of attack. *See*

4  Shaver Decl. ¶ 8. It is possible that Plaintiffs could prevail on their Misrepresentation Claims but

5  ultimately obtain monetary relief that was far less valuable than the settlement.

6      With regard to Plaintiffs' Benefits Due claim, Save Mart both disputes that the claim has

7  legal merit and also took steps to attempt to remedy its alleged failure to properly terminate the

8  plan in April, 2024. *See* ECF No. 79-61. If the court were to find Save Mart's attempted cure

9  sufficient, liability for the Benefits Due claim would be capped at just two years' worth of benefits.

10  In addition, Save Mart has raised arguments regarding the statute of limitations and the types of

11  benefits that Plaintiffs are entitled to seek that, if successful, would deny all relief to the proposed

12  class even if Plaintiffs are able to prove that the breaches occurred. *See* ECF No. 99.

13      Finally, considering the complexity of this litigation, the many years the parties have

14  already litigated, and the human reality that Settlement Class Members are either already retired or

15  nearing retirement and thus need these benefits now, numerous of them are elderly, and several

16  have passed away during the pendency of the litigation, Shaver Decl. ¶ 9, the settlement is an

17  important step in guaranteeing meaningful relief for Settlement Class Members now, rather than

18  speculative future relief that may come too late for many of the recipients. *See In re Volkswagen*

19  *"Clean Diesel" Litig.*, 229 F. Supp. 3d 1052, 1065 (N.D. Cal. 2017) ("Settlement is favored in

20  cases that are complex, expensive, and lengthy to try."). For these reasons, *Churchill* Factors 1

21  through 3 weigh in favor of preliminarily approving the Settlement Agreement.

22      ***Churchill* Factor 4.** The Class Settlement Amount of $20,545,000 represents a superb

23  resolution of this action. To assess the fairness of that amount for settlement purposes, Plaintiffs

24  employed an actuary to measure Save Mart's liability for the benefits that it eliminated. Shaver

25  Decl. ¶ 11. The actuary calculated a present value of each Settlement Class member's HRA

26  benefits, consistent with Save Mart's alleged misrepresentation to provide retiree medical benefits

27  for the life of retirees. Shaver Decl. Ex. 3 at 1. The HRA benefits include the spousal benefit for

28  those who were receiving it at time of Plan termination, as well as any HRA credits remaining in

Settlement Class Member's HRA accounts at the time the Plan was terminated (which credits were reclaimed by Save Mart). *Id.* The total estimated damages is the sum of each individual Settlement Class Member's HRA present value. *Id.*

Pursuant to these calculations, the settlement represents a recovery of 46% percent of Plaintiffs' best-case estimate of the present value of the HRA benefits.[4] That percentage recovery is significantly higher than other class action ERISA settlements recently approved in this District. *See, e.g.*, *Foster v. Adams & Assocs., Inc.*, Case No. 18-cv-02723-JSC, 2022 WL 425559, at *5 (N.D. Cal. Feb. 11, 2022) (granting final approval to ERISA class action settlement that represented "approximately 28.5% of the maximum amount of the loss determined by Plaintiffs' expert," and collecting out-of-District ERISA class action settlement cases with recoveries ranging between 3.2% and 30%); *see also Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) ("[I]t is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial."). It also represents a far higher per-class member recovery than settlements in cases involving similar claims. *See* Section IV.B.3, *infra* (Guidance 11) (comparing settlements and class sizes). Given the stage of these proceedings and the risks associated with further litigation, the Class Settlement Amount of $20,545,000 represents fair, reasonable, and adequate consideration.

Lastly, the settlement amount reflects a significant percentage of Save Mart's value as a company and Plaintiffs are cognizant that changes to Save Mart's business over the last few years render the pursuit of a higher settlement or verdict recovery in the future a risky proposition. In 2022, the company was sold to a private equity firm for just $245 million. Shaver Decl. ¶ 23. A subsequent dispute between the buyers and sellers reduced the value of that transaction by $109 million due to existing debt held by a Save Mart distribution subsidiary, reflecting a net sale price of the entire company of just $136 million. *Id.* The settlement itself thus reflects approximately 15% of Save Mart's total value as a business when it was sold in 2022. Then in 2024, the company

---

[4] In the course of the parties' negotiations, Save Mart disputed several of Plaintiffs' underlying actuarial assumptions and countered with its own estimates of the present day value of the HRA benefits, which were substantially lower. The parties engaged in several rounds of good faith discussions regarding actuarial methodology. At the end of the day, if Plaintiffs won on every issue, but the Court agreed with Save Mart's expert on these methodological issues, then the settlement would represent a substantially higher percentage of Save Mart's liability. *Id.* ¶ 12.

was sold again and it has since reportedly closed stores and shut down its distribution business, which resulted in a mass layoff. *Id.* ¶ 24. These economic factors raise significant concerns about Defendants' ability to fund a higher future settlement or judgment and are a further reason why a guaranteed settlement now is of significant benefit to the Class.

*Churchill* **Factor 5.** Under the fifth *Churchill* factor, "[c]lass settlements are presumed fair when they are reached 'following sufficient discovery and genuine arms-length negotiation.'" *Cottle*, 340 F.R.D. at 375 (quoting *DIRECTV*, 221 F.R.D. at 528). Where the parties exchanged extensive information in discovery, "[a] court may assume that the parties have a good understanding of the strengths and weaknesses of their respective cases and hence that the settlement's value is based upon such adequate information." 4 William B. Rubenstein et al., *Newberg and Rubenstein on Class Actions* § 13:49 (6th ed. 2022); *cf. In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 320 (N.D. Cal. 2018).

Here, the parties have engaged in extensive discovery. Plaintiffs and their counsel investigated Plaintiffs' claims by reviewing documents and interviewing witnesses before filing the original complaint. Shaver Decl. ¶ 22. During discovery, Plaintiffs reviewed and produced 766 of their own documents, and they reviewed 13,739 documents Save Mart produced. *Id.* ¶¶ 6-7. obtained forty-six class member declarations and six declarations of former Save Mart HR representatives. *Id.* ¶ 10. The parties conducted a total of twenty-six depositions: four of Plaintiffs, twenty-one of HR representatives and other Settlement Class Members, and one of Save Mart's Rule 30(b)(6) witness. *Id.* ¶¶ 6-7. The parties exchanged interrogatories and requests for admission, and each party amended its responses and provided additional answers when discovery revealed new information. *Id.* Finally, during the settlement negotiation process, Plaintiffs engaged an actuary to determine Save Mart's potential liability, and Save Mart provided Plaintiffs with Settlement Class Member data, supplementing that data when necessary. *Id.* ¶¶ 11-12, 14. Given this extensive discovery, Plaintiffs and their counsel had the information necessary to assess the settlement's value and conclude that the settlement is in the Settlement Class's best interest.

Additionally, the Settlement is an arms-length agreement. The parties engaged an experienced mediator in November 2024 for a full day mediation. *Id.* ¶ 11; *see Int'l Longshore &*

*Warehouse Union, Local 142 v. C. Brewer & Co., Ltd.*, Civil No. CV 06–00260 SOM LEK, 2007 WL 4145228, at *2 (D. Haw. Nov. 20, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."). Following that mediation session, the parties continued negotiations with the facilitation of the mediator until they reached an agreement-in-principle in January 2025. Shaver Decl. ¶¶ 12-13. The parties then refined the provisions of the Settlement Agreement, which they finalized on April 18, 2025. *Id.* ¶ 15. The terms of this final Settlement Agreement are the product of arms-length negotiations: counsel has not yet moved for Attorneys' Fees (and will in no event seek more than 30% of the total Settlement Fund), and no part of the Settlement Fund will revert back to Save Mart absent termination of the Settlement Agreement. Shaver Decl. ¶ 20; SA §§ III ("Common Fund" provisions), IV.3.c (distributing any remainder to a *cy pres* recipient); *see also Cottle*, 340 F.R.D. at 376 (holding that class action settlement agreements are not the product of arms-length negotiations "(1) when counsel receive a disproportionate distribution of the settlement or when the class receives no monetary distribution but class counsel are amply rewarded; (2) when the payment of attorneys' fees is separate and apart from class funds; and (3) when the parties arrange for benefits that are not awarded to revert to the defendants rather than being added to the class fund") (cleaned up).

*Churchill* **Factor 6.** The experience of Settlement Class Counsel supports preliminary approval. As discussed in Section IV.A.1, *supra*, Settlement Class Counsel have extensive experience litigating complex class actions, including those arising under ERISA, and have dedicated significant time, expense, and resources to vigorously pursuing this litigation. Based on their extensive experience, Settlement Class Counsel believe the Settlement Agreement represents an excellent outcome for the Settlement Class and should be approved.

*Churchill* **Factors 7-8.** There is no presence of the government in this action, so *Churchill* Factor 7 does not apply. *Carlotti v. ASUS Comput. Int'l*, No. 18-cv-3369-DMR, 2019 WL 6134910, at *7 (N.D. Cal. Nov. 19, 2019). Regarding *Churchill* Factor 8, Plaintiffs' counsel have been in communication with numerous Settlement Class Members throughout this case and are confident that the people most affected by and engaged with this litigation desire prompt resolution and are pleased that the parties have reached a potential settlement, but nonetheless respectfully submit that

1    the Court should consider Settlement Class Members' reaction at the final approval stage, after

2    Notice has issued and the period for objection and opt-out has expired. *Id.*

3    ## 2.    The Rule 23(e)(2) Requirements Are Met.

4        Rule 23(e)(2) requires courts to consider whether: "(A) the class representatives and class

5    counsel have adequately represented the class; (B) the proposal was negotiated at arm's length;

6    (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay

7    of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class,

8    including the method of processing class-member claims; (iii) the terms of any proposed award of

9    attorney's fees, including timing of payment; and (iv) any agreement required to be identified under

10   Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other." Fed. R.

11   Civ. P. 23(e)(2). Here, all requirements are met.

12       Several of the Rule 23(e)(2) factors are satisfied through the Rule 23(a), Rule 23(b)(3), and

13   *Churchill* analyses above. *See supra* Section IV.A.1 (addressing Rule 23(e)(2)(A)'s adequacy of

14   representation requirement, under Rule 23(a)); Section IV.B.1 (addressing Rule 23(e)(2)(B)'s

15   arms-length negotiation requirement, under *Churchill* Factor 5); *id.* (addressing Rule

16   23(e)(2)(C)(i)'s adequacy of relief requirement, under *Churchill* Factors 1-4); *see also Cottle*, 340

17   F.R.D. at 376 (noting the overlap in these analyses). The remaining requirements are also satisfied.

18       **Rule 23(e)(2)(C)(ii)** is satisfied because the proposed notice program and distribution

19   process are effective. *See Cottle*, 340 F.R.D. at 378. The Settlement Administrator will mail and

20   email the Notice to each Settlement Class Member, using contact information maintained by Save

21   Mart. SA § V.2. The Notice plan includes instructions for the Settlement Administrator in case

22   Notice is returned as undeliverable, including a skip trace search. *Id.* The Settlement Administrator

23   will maintain a toll-free number and case-specific website to address Settlement Class Member

24   inquiries and questions. *Id.* at § V.1. Settlement Class Members will not need to submit a claim to

25   receive payment; all participating Settlement Class Members will automatically receive a check.

26   *See* SA § IV.3.c. With these provisions, the proposed Notice and plan to distribute relief to the

27   Settlement Class Members is effective. *See Cottle*, 340 F.R.D. at 377-78.

28       **Rule 23(e)(2)(C)(iii)** is satisfied because the settlement is not driven by fees (that is,

Settlement Class Counsel will not receive a disproportionate distribution of the Common Fund). *Id.* (courts determine whether "the record suggests that settlement is driven by fees; that is, when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded"). As an initial matter, Settlement Class Counsel do not seek Attorneys' Fees or Litigation Expenses at this time; instead, they will do so in a separate motion if the Court grants preliminary approval. SA § IV.3.a. Furthermore, the settlement is not dependent on an award of Attorneys' Fees or Litigation Expenses. *Id.* Finally, when Plaintiffs' counsel seek Attorneys' Fees after preliminary approval, they will seek no more than 30% of the Class Settlement Amount. Shaver Decl. ¶ 20. This award is below the range regularly approved in Ninth Circuit district courts, including this District. *See Hernandez v. Dutton Ranch Corp.*, Case No.: 19-cv-00817-EMC, 2021 WL 5053476, at *6 (N.D. Cal. Sept. 10, 2021) ("District courts within this circuit, including this Court, routinely award attorneys' fees that are one-third of the total settlement fund.") (collecting cases).

**Rule 23(e)(2)(C)(iv)** is satisfied because there is no agreement between Plaintiffs and Save Mart other than the Settlement Agreement. Shaver Decl. ¶ 21; SA § X.9.

**Rule 23(e)(2)(D)** is satisfied because the Settlement Agreement and the Plan of Distribution treat all Settlement Class Members equitably. The Settlement Administrator will apply the same formula to calculate each Participating Settlement Class Member's distribution. Shaver Decl. Ex. 3 at 2. That formula will adhere to generally accepted actuarial principles and will account for each Settlement Class Member's estimated present value of HRA benefits. Shaver Decl. Ex. 3 at 1. The effect of these calculations is to provide every Settlement Class Member with their expected lifetime retiree medical benefits, discounted by the exact same litigation risk factor for all Settlement Class Members. Because the Settlement Agreement applies the same formula to every Settlement Class Member, and also "ties Class Members' recovery to their potential damages," the Settlement Agreement treats all Settlement Class Members equitably. *Barr v. SelectBlinds LLC*, Case No. 2:22-cv-08326-SPG-PD, 2024 WL 5162609, at *8 (C.D. Cal. Mar. 4, 2024); *see also In re Anthem*, 327 F.R.D. at 332 ("A plan of allocation that reimburses class members based on the type and extent of their injuries is generally reasonable. . . . [A]n allocation formula need only have

a reasonable, rational basis, particularly if recommended by experienced and competent counsel.") (citations omitted).

### 3.    The Northern District Guidance Supports Approval.

**Guidance 1(a)—Class Definition.** A class has not yet been certified. The Settlement Class Definition is in accord with the definition Plaintiffs advanced when moving for class certification:

*Compare* ECF No. 79 at 3:

> Plaintiffs seek certification of a Class consisting of the non-union participants in the retiree Plan at the time of its termination, as well as non-union Save Mart employees who retired and met the eligibility criteria to become participants in the Plan at any time between when Save Mart announced the termination on April 22, 2022 and the resolution of this action.

*With* SA § II:

> All people who were participants in the Save Mart Select Retiree Health Benefit Plan as of June 30, 2022, all people who retired and met the Eligibility Criteria at any time on or after April 22, 2022, and all current Save Mart employees who have not yet retired but have otherwise met the Eligibility Criteria.

The only difference between the definitions is that the first continued through "resolution of this action," which meant that the Class continued to grow as eligible employees retired, while the second definition captures *all* employees who are now eligible for benefits, or would become eligible upon retirement, if the Plan were still operating. This difference is appropriate: it allows the Court to assess the settlement in light of a definite class composition, prevents eligible active employees from being put in the position of needing to retire to participate in the case, and guarantees that all employees harmed by Save Mart's alleged misrepresentations are afforded the opportunity to recover. As such, this Guideline supports preliminary approval.

**Guidance 1(b)—Released Claims.** The Settlement Agreement defines the scope of released claims as "any and all claims of any kind or nature whatsoever for any losses, damages, or relief of any kind or nature whatsoever, including without limitation any equitable relief, relating to or arising out of the terminability, duration, or quality of Plan benefits, or any allegations contained in the complaint and all amended complaints in this Action." SA § VII.2. The Settlement Agreement also includes a provision for "Waiver of Unknown Claims" which states that Settlement Class Members "expressly waive[] the benefits of any statutory provisions or common law rule that

provides, in substance or effect, that a general release does not extend to claims which the party does not know or suspect to exist in its favor at the time of executing the release, which if known by it, would have materially affected its settlement with any other party. In particular, but without limitation, Settlement Class Representatives and Settlement Class Members waive the provisions of California Civil Code § 1542 (or any like or similar statute or common law doctrine), and do so understanding the significance of that waiver." *Id.* § VII.3. These release provisions are appropriately tailored to the allegations of the complaint and consistent with class action settlement agreements approved in this District. *See, e.g.*, Settlement Agreement at 6, *Campa v. Bd. of Trustees of Sheet Metal Workers Pension Plan of N. Cal.*, Case No. 3:23-cv-01760-MMC (N.D. Cal. July 20, 2024), ECF No. 45-1 (settlement agreement with similar release provisions); Final Order and Judgment, *Bd. of Trustees of Sheet Metal Workers Pension Plan of N. Cal.*, Case No. 3:23-cv-01760-MMC (N.D. Cal. Nov. 15, 2024), ECF No. 51 (issuing final approval of that settlement).

**Guidance 1(c)—Value.** This Guidance is discussed above regarding *Churchill* Factor 4.

**Guidance 1(d)—Other Cases.** No other cases will be affected. Shaver Decl. ¶ 21.

**Guidance 1(e)—Allocation.** The settlement's Plan of Distribution is described above in Section IV.B.2 regarding the Rule 23(e)(2)(C)(ii) analysis.

**Guidance 1(f)—Claims Rate.** Because payments will be made to Settlement Class Members without the need for a claims form, SA § IV.3.c, this Guidance does not apply.

**Guidance 1(g)—Reversion.** None of the Class Settlement Amount will revert to Save Mart, unless the Court denies approval of the Settlement, satisfying this Guidance. SA § VI.6.

**Guidance 2—Settlement Administrator.** The parties request that the Court appoint CPT as Settlement Administrator. CPT is an experienced, reputable, and nationally recognized settlement administrator with whom Settlement Class Counsel have worked before. Shaver Decl. ¶ 17. Settlement Class Counsel requested bids from CPT and two other reputable, national claims administrators with extensive class action experience. *Id.* Settlement Class Counsel selected CPT because it provided a comprehensive proposal at a better rate. *Id.* CPT maintains procedures for securely handling class member data (including technical, administrative, and physical controls; retention; destruction; audits; and crisis response). *Id.* ¶ 18. Additionally, CPT accepts

responsibility for and maintenance of insurance in case of errors. *Id.* In the past two years, Settlement Class Counsel has worked with CPT in the following 7 cases: *Cordoba v. DirecTV, LLC*, No. 1:15-cv-3755 (N.D. Ga.); *DiMalanta v. North Plaza Restaurant Partners LLC*, No. BC695657 (Cal. Super. Ct. Los Angeles Cnty.); *Ibarra v. Artisan Screen Printing, Inc.*, No. 19STCV28309 (Cal. Super. Ct. Los Angeles Cnty.); *Lopez-Solano v. Artisan Screen Printing, Inc.*, No. BC590358 (Cal. Super. Ct. Los Angeles Cnty.); *Ofelia Alberto v. Meggitt (Orange County), Inc.*, No. 21STCV07136 (Cal. Super Ct. Los Angeles Cnty.); *Catano v. Compass Foods, Inc.*, No. CV-21-001610 (Cal. Super. Ct. Stanislaus Cnty.); *Maldonado v. World Class Distribution, Inc.*, No. BC680208 (Cal. Super. Ct. Los Angeles Cnty.); and *Ponce v. CH2M Hill Engineers, Inc.*, No. 2:23-cv-10797 (C.D. Cal.); *see also id.* ¶ 17. The administrative costs for CPT's services will be paid out of the Class Common Fund. SA § IV.3.a. These costs are anticipated to be approximately $19,000, which represents a mere .09% percent of the Class Common Fund. Shaver Decl. ¶ 17. In relation to the value of the Settlement, these costs are reasonable.

**Guidance 3—Notice.** As set forth above with regard to Rule 23(e)(2)(C)(ii), the Notice plan is effective and satisfies Rule 23(e). The Notice itself satisfies Guidance 3 because it contains all elements set forth in this Guidance: (a) contact information for Settlement Class Counsel (Shaver Decl. Ex. 2 at 6, 12-13); (b) the address for the Settlement website, which in turn will contain all required information (*id.* at 12); (c) instructions for how to access case documents (*id.* at 4-5, 12-13); (d) details regarding the final approval hearing (*id.* at 4-5); and (e) notice that the final approval date may change (*id.* at 5).

**Guidance 4-5—Opt-Outs and Objections.** Pursuant to Guidance 4 and 5, the proposed Notice includes information on Settlement Class Members' rights to: (1) request exclusion, including the manner for submitting such a request (requiring no extraneous information or hurdles) and deadline to do so; (2) comment on or object to the settlement, or any aspect thereof, and the manner and deadline for submitting an objection; and (3) participate in the settlement. Shaver Decl. Ex. 2 at 8-12. The proposed Notice also provides contact information for Settlement Class Counsel and the Settlement Administrator, and it includes the URL for a settlement website where Settlement Class Members may seek additional information. *Id.* at 12-13.

**Guidance 6—Fees.** This Guidance is addressed above, under Rule 23(e)(2)(C)(iii).

**Guidance 7—Service Awards.** The Ninth Circuit has "repeatedly held that reasonable incentive awards to class representatives are permitted." *In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 785 (9th Cir. 2022) (internal quotation marks and citations omitted). Service awards are "fairly typical in class action cases." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009). Plaintiffs will seek Service Awards in the amount of $25,000 per Plaintiff when they file their separate motion for Attorneys' Fees, Costs, and Service Awards. SA § IV.3.a-b. This future request is disclosed in the Notice (Shaver Decl. Ex. 2 at 7) and is in line with awards granted in similar cases in Ninth Circuit district courts. *See, e.g.*, *Marshall v. Northrop Grummen Corp.*, Case No. 16-CV-6794 AB (JCx), 2020 WL 5668935, at *10-12 (C.D. Cal. Sept. 18, 2020) (awarding $25,000 to each of three retiree class representatives in an ERISA class action).

**Guidance 8—Cy Pres.** If settlement funds remain after exhausting both distribution attempts, the parties will disburse those funds to the American Association of Retired Persons ("AARP") as a *cy pres* recipient. SA § IV.3.c. AARP's work accounts for the nature of this lawsuit and the interests of the Settlement Class, as it works to protect the interests of retired persons. Shaver Decl. ¶ 19; *see also Lane v. Facebook, Inc.*, 696 F.3d 811, 819-20 (9th Cir. 2012) (noting any *cy pres* should "account for the nature of the plaintiffs lawsuit, the objectives of the underlying statutes, and the interests of the silent class members") (cleaned up).

**Guidance 9—Schedule.** Plaintiffs propose the following schedule:

| Event/Deadline | Proposed Time for Compliance |
|---|---|
| Notice | 26 days after Preliminary Approval Order |
| Motion for Attorneys' Fees, Costs, and Service Awards | 21 days after Notice |
| Objection Deadline | 35 days after Notice |
| Opt-Out Deadline | 35 days after Notice |
| Motion for Final Approval | 21 days before Final Approval Hearing |
| Oppositions to Motion for Final Approval | 14 days before Final Approval Hearing |
| Reply in Support of Motion for Final Approval | 7 days before Final Approval Hearing |
| Final Approval Hearing | At least 96 days after the Preliminary Approval Order |

**Guidance 10—CAFA Notice.** Save Mart will serve the notice required by the Class Action Fairness Act, 28 U.S.C. § 1715, no later than 10 days after this filing. SA § V.3. Save Mart will file

a declaration with the Court certifying its completion of CAFA notice. *Id.*

**Guidance 11—Comparable Outcomes.** Settlement Class Counsel has summarized comparable settlements in a separate chart. *See* Shaver Decl. Ex. 4.  Below are brief narratives for each comparable case. Notably, the settlement achieved here will result in a far higher average recovery per Settlement Class Member than in all of these comparable cases. *Id.*

*Blenko v. Cabell Huntington Hosp., Inc.* involved claims for breaches of fiduciary duty caused by misrepresentations. No. 3:21-0315, 2022 WL 3229968, at *1 (S.D.W.V. Aug. 10, 2022). The fiduciaries had told employees that they would have retiree medical benefits for life upon retirement, despite language in the plan's documents that reserved the company's right to terminate the plan at any time. *Id.* at *1-2. There, the plaintiffs—non-union retirees—achieved a $4,974,500 settlement on behalf of 211 class members. *Id.* at *7.

*Hurtado v. Rainbow Disposal Co., Inc.* involved claims against fiduciaries of an ESOP plan for, *inter alia*, failure to follow plan documents and for breaches of fiduciary duty caused by misrepresentations and omissions. *See* Compl., No. 8:17-cv-01605 (C.D. Cal. Sept. 15, 2017), ECF No. 1. There, the plaintiffs—current and former employees of Rainbow Disposal—achieved a $7.9 million settlement on behalf of 460 class members. *Id.* ¶¶ 10-15; 2021 WL 2327858, at *1 (C.D. Cal. May 21, 2021); 2019 WL 1771797, at *6 (Apr. 22, 2019).

*Pfeifer v. Wawa, Inc.* involved claims against fiduciaries of an ESOP plan for failure to follow plan terms and for breaches of fiduciary duties caused by misrepresentations. No. 16-497, 2018 WL 4203880, at *2 (E.D. Pa. Aug. 31, 2018). There, the plaintiffs—former participants in the ESOP plan—achieved a $25 million settlement on behalf of 1,260 class members. *Id.* at *4, 6.

*Foster v. Adams & Assocs., Inc.* involved claims against fiduciaries of an ESOP plan for, *inter alia*, failure to make required disclosures. No. 18-cv-02723-JSC, 2022 WL 425559, at *1 (N.D. Cal. Feb. 11, 2022). There, the plaintiffs—current and former Adams and Associates employees—achieved a $3 million settlement on behalf of 3,561 class members. *Id.* at *2, 5.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court grant this unopposed motion for preliminary approval.

Dated:      April 21, 2025        Respectfully submitted,


                                    /s/ *Anne B. Shaver*
                                    Anne B. Shaver

                                Anne B. Shaver (CA Bar No. 255928)
                                Michelle A. Lamy (CA Bar No. 308174)
                                Benjamin A. Trouvais (CA Bar No. 353034)
                                LIEFF CABRASER HEIMANN & BERNSTEIN LLP
                                275 Battery St., 29th Floor
                                San Francisco, CA 94111
                                Phone: (415) 956-1000
                                Fax: (415) 956-1008

                                James P. Keenley (CA Bar No. 253106)
                                Emily A. Bolt (CA Bar No. 253109)
                                BOLT KEENLEY KIM LLP
                                2855 Telegraph Ave., Suite 517
                                Berkeley, CA 94705
                                Phone: (510) 225-0696
                                Fax: (510) 225-1095

                                Matthew J. Matern (CA Bar No. 159798)
                                Mikael H. Stahle (CA Bar No. 182599)
                                Erin R. Hutchins (CA Bar No. 346557)
                                MATERN LAW GROUP, PC
                                2101 E. El Segundo Blvd., Suite 403
                                El Segundo, CA 90245
                                Phone: (310) 531-1900
                                Fax: (310) 531-1901

                                *Attorneys for Plaintiffs and the Proposed Class*