1   Anne B. Shaver (CA Bar No. 255928)
    Michelle A. Lamy (CA Bar No. 308174)
2   Benjamin A. Trouvais (CA Bar No. 353034)
    LIEFF CABRASER HEIMANN & BERNSTEIN LLP
3   275 Battery St., 29th Floor
    San Francisco, CA 94111
4   Phone: (415) 956-1000
    Fax: (415) 956-1008
5

6   James P. Keenley (CA Bar No. 253106)
    Emily A. Bolt (CA Bar No. 253109)
7   BOLT KEENLEY KIM LLP
    2855 Telegraph Ave., Suite 517
8   Berkeley, CA 94705
    Phone: (510) 225-0696
9   Fax: (510) 225-1095
10

11  Matthew J. Matern (CA Bar No. 159798)
    Mikael H. Stahle (CA Bar No. 182599)
12  Erin R. Hutchins (CA Bar No. 346557)
    MATERN LAW GROUP, PC
13  2101 E. El Segundo Blvd., Suite 403
    El Segundo, CA 90245
14  Phone: (310) 531-1900
    Fax: (310) 531-1901
15

16  *Settlement Class Counsel*

17                    **UNITED STATES DISTRICT COURT**

18                    **NORTHERN DISTRICT OF CALIFORNIA**

19  KATHERINE BAKER, JOSÉ LUNA,            )   Case No.: 1:22-cv-4645-RMI
    EDGAR POPKE, and DENNY G. WRASKE,      )
20  Jr., on behalf of themselves and all others )   **PLAINTIFFS' NOTICE OF MOTION**
    similarly situated,                    )   **AND MEMORANDUM OF POINTS AND**
21                                         )   **AUTHORITIES IN SUPPORT OF**
                                           )   **UNOPPOSED MOTION FOR FINAL**
22              Plaintiffs,                )   **APPROVAL OF CLASS ACTION**
                                           )   **SETTLEMENT UNDER FEDERAL RULE**
23  v.                                     )   **OF CIVIL PROCEDURE 23**
                                           )
24  SAVE MART SUPERMARKETS and SAVE        )
    MART SELECT RETIREE HEALTH             )   Hearing
25  BENEFIT PLAN,                          )   Date/Time: September 16, 2025 at 10:00am
                                           )   Location: Eureka-McKinleyville Courthouse,
26              Defendants.                )   McKinleyville, CA
                                           )
27  _____    )

28

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION ................................................................................................ 1

I.     INTRODUCTION ............................................................................................. 2

II.    BACKGROUND ............................................................................................... 3

    A.    Factual Background and Procedural History through Preliminary Approval ......... 3

    B.    Notice and Settlement Administration ................................................. 4

III.   LEGAL STANDARD ........................................................................................ 5

IV.    ARGUMENT .................................................................................................... 6

    A.    The Settlement Class Meets the Criteria for Certification. ........................ 6

        1.    The Requirements of Rule 23(a) Are Satisfied. ............................ 6

        2.    Class Certification Is Appropriate Under Rule 23(b)(3). ................. 9

    B.    The Settlement Is Fundamentally Fair, Reasonable, and Adequate. ............ 11

        1.    The Rule 23(e)(2) Requirements Are Met. ................................. 11

        2.    The Northern District Guidance Supports Approval. ..................... 18

        3.    Class Member Objections Do Not Prevent Final Approval. ............ 19

    C.    Notice Was Reasonable and Adequate. .................................................. 21

V.     CONCLUSION ................................................................................................ 23

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abante Rooter & Plumbing, Inc. v. Pivotal Payments Inc.*,
   No. 3:16-cv-05486, 2018 WL 8949777 (N.D. Cal. Oct. 15, 2018) ................................... 20, 21

*In re Anthem, Inc. Data Breach Litig.*,
   327 F.R.D. 299 (N.D. Cal. 2018) ................................................................................................ 17

*In re Apple Inc. Device Performance Litig.*,
   50 F.4th 769 (9th Cir. 2022) ........................................................................................................ 23

*Barr v. SelectBlinds LLC*,
   Case No. 2:22-cv-08326-SPG-PD, 2024 WL 5162609 (C.D. Cal. Mar. 4, 2024) .................. 17

*Blenko v. Cabell Huntington Hosp., Inc.*,
   No. 3:21-0315, 2022 WL 3229968 (S.D.W.V. Aug. 10, 2022) ................................................. 13

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) ........................................................................................................ 12

*Briseno v. ConAgra Foods, Inc.*,
   844 F.3d 1121 (9th Cir. 2017) ..................................................................................................... 23

*Briseño v. Henderson*,
   998 F.3d 1014 (9th Cir. 2021) ..................................................................................................... 12

*In re Cal. Gasoline Spot Mkt. Antitrust Litig.*,
   No. 3:20-cv-03131-JSC, 2025 WL 822665 (N.D. Cal. Mar. 14, 2025) ................................... 12

*Campbell v. Facebook, Inc.*,
   951 F.3d 1106 (9th Cir. 2020) ..................................................................................................... 18

*In re College Athlete NIL Litig.*,
   No. 20-cv-03919, 2025 WL 1675820 (N.D. Cal. June 6, 2025) ................................................ 20

*In re Computer Scis. Corp. ERISA Litig.*,
   No. CV 08–02398 SJO, 2008 WL 7527872 (C.D. Cal. Dec. 29, 2008) ........................... 7, 8, 10

*Cottle v. Plaid Inc.*,
   340 F.R.D. 356 (N.D. Cal. 2021) ....................................................................................... 6, 12, 16

*Depenbrock v. Cigna Corp.*,
   389 F.3d 78 (3d Cir. 2004) .......................................................................................................... 14

*Dyer v. Wells Fargo Bank, N.A.*,
   303 F.R.D. 326 (N.D. Cal. 2014) ................................................................................................ 13

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page(s)**

*Ellis v. Costco Wholesale Corp.*,
  285 F.R.D. 492 (N.D. Cal. 2012) ................................................. 7

*Foster v. Adams & Assocs., Inc.*,
  Case No. 18-cv-02723-JSC, 2022 WL 425559 (N.D. Cal. Feb. 11, 2022) ................12, 13, 14

*Freeze v. PVH Corp.*,
  No. CV 19-1694 PSG (Ex), 2021 WL 2953161 (C.D. Cal. Jan. 7, 2021) ............................... 12

*Fremont General*,
  No. 2:07-cv-02693-JHN-FFMx, 2010 WL 3168088 (C.D. Cal. Apr. 15, 2010) .................... 10

*Gutierrez v. Amplify Energy Grp.*,
  No. 8:21-CV-01628-DOC(JDEx), 2023 WL 6370233 (C.D. Cal. Sept. 14,
  2023) ................................................................................13, 17

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ............................................16, 18

*Harbour v. Cal. Health & Wellness Plan*,
  No. 21-cv-03322, 2024 WL 171192 (N.D. Cal. Jan. 16, 2024) ................................. 6

*Huber v. Casablanca Indus., Inc.*,
  916 F.2d 85 (3d Cir. 1990) ................................................. 14

*Hurtado v. Rainbow Disposal Co.*,
  Case No. 8:17-cv-01605-JLS-DFM, 2019 WL 1771797
  (C.D. Cal. Apr. 22, 2019) ................................................. 8

*Hurtado v. Rainbow Disposal Co., Inc.*,
  No. 8:17-cv-01605, 2021 WL 2327858 (C.D. Cal. May 21, 2021) ...................................12, 14

*In re Hyundai & Kia Fuel Econ. Litig.*,
  926 F.3d 539 (9th Cir. 2019) ................................................. 11

*Kanawi v. Bechtel Corp.*,
  254 F.R.D. 102 (N.D. Cal. 2008) ................................................. 8

*Knapp v. Art.com, Inc.*,
  283 F. Supp. 3d 823 (N.D. Cal. 2017) ................................................. 21

*In re Linkedin User Privacy Litig.*,
  309 F.R.D. 573 (N.D. Cal. 2015) ................................................. 20

*Marshall v. Northrop Grumman Corp.*,
  No. 2:16-cv-06794-AB-JC, 2020 WL 5668935 (C.D. Cal. Sept. 18, 2020) .......................... 18

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Martinelli v. Johnson & Johnson*,
No. 2:15-cv-01733-MCE-DB, 2022 WL 4123874 (E.D. Cal. Sept. 9, 2022) ........................ 12

*Moyle v. Liberty Mut. Ret. Benefit Plan*,
Case No. 10cv2179 DMS (BLM), 2012 WL 13149097
(S.D. Cal. Apr. 10, 2012) ........................................................................................6, 8, 10

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004) ...................................................................................... 13

*Nwabueze v. AT&T Inc.*,
No. C 09–01529, 2013 WL 6199596 (N.D. Cal. Nov. 27, 2013) ............................................ 21

*Officers for Just. v. Civ. Serv. Comm'n*,
688 F.2d 615 (9th Cir. 1982) ............................................................................................. 13

*Osberg v. Foot Locker, Inc.*,
No. 07-1358 (KBF), 2014 WL 5796686 (S.D.N.Y. Sept. 24, 2014) ........................................ 8

*Parsons v. Ryan*,
754 F.3d 657 (9th Cir. 2014) ............................................................................................. 8

*Pfeifer v. Wawa, Inc.*,
No. 16-497, 2018 WL 4203880 (E.D. Pa. Aug. 31, 2018) ...................................................... 14

*Reyes v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*,
281 F. Supp. 3d 833 (N.D. Cal. 2017) ................................................................................ 20

*Rodriguez v. Danell Custom Harvesting, LLC*,
293 F. Supp. 3d 1117 (E.D. Cal. 2018) ............................................................................... 6

*Ruiz Torres v. Mercer Canyons Inc.*,
835 F.3d 1125 (9th Cir. 2016) .........................................................................................7, 10

*Shannon v. Sherwood Mgmt. Co, Inc.*,
No. 19-cv-1101-BAS-JLB, 2020 WL 5891587 (S.D. Cal. Oct. 5, 2020) .............................. 13

*In re Syncor ERISA Litig.*,
516 F.3d 1095 (9th Cir. 2008) ........................................................................................... 5

*In re TracFone Unlimited Serv. Plan Litig.*,
112 F. Supp. 3d 993 (N.D. Cal. 2015) ............................................................................... 19

*Vaquero v. Ashley Furniture Indus., Inc.*,
824 F.3d 1150 (9th Cir. 2016) ........................................................................................... 7

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liability Litig.*,
895 F.3d 597 (9th Cir. 2018) ............................................................................................. 5

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page(s)**

*Wal-Mart Stores, Inc. v. Dukes,*
    564 U.S. 338 (2011) ............................................................................................. 7

3

*Warmenhoven v. NetApp, Inc.,*
    13 F.4th 717 (9th Cir. 2021) ............................................................................... 14

4

5

*Wren v. RGIS Inventory Specialists,*
    No. C–06–05778, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) ......................... 21

6

**Statutes**

7

29 U.S.C. § 1132(a)(1)(B) ......................................................................................... 7

8

29 U.S.C. § 1321(a)(1) ............................................................................................... 7

9

29 U.S.C. § 1104(a)(1) ............................................................................................... 7

10

**Court Rules**

11

Fed. R. Civ. P. 23 .................................................................................................. 2, 6

12

Fed. R. Civ. P. 23(a)(1) ............................................................................................. 6

13

Fed. R. Civ. P. 23(a)(1)-(4) ...................................................................................... 6

14

Fed. R. Civ. P. 23(a)(4) ........................................................................................... 12

15

Fed. R. Civ. P. 23(b) ................................................................................................. 6

16

Fed. R. Civ. P. 23(b)(3) ..................................................................................... 10, 11

17

Fed. R. Civ. P. 23(e)(2) ........................................................................................... 11

18

Fed. R. Civ. P. 23(e)(2)(A) ..................................................................................... 12

19

Fed. R. Civ. P. 23(e)(2)(B) ..................................................................................... 12

20

Fed. R. Civ. P. 23(e)(2)(C) ................................................................................ 13, 20

21

Fed. R. Civ. P. 23(e)(2)(C)(i) ............................................................................ 14, 20

22

Fed. R. Civ. P. 23(e)(2)(C)(iii) .......................................................................... 16, 18

23

Fed. R. Civ. P. 23(g)(3) ............................................................................................. 9

24

Fed. R. Civ. P. 30(b)(6) .......................................................................................... 3, 4

25

26

27

28

**NOTICE OF MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on September 16, 2025 at 10:00am, or as soon as the matter may be heard before the Honorable Robert M. Illman of the United States District Court for the Northern District of California, located at the Eureka-McKinleyville Courthouse, 3140 Boeing Avenue, McKinleyville, CA 95519, Plaintiffs Katherine Baker, José Luna, Edgar Popke, and Denny G. Wraske, Jr. ("Plaintiffs" or "Settlement Class Representatives")[1] will and hereby do move for an order pursuant to Rule 23 of the Federal Rules of Civil Procedure: (i) granting final approval of the Settlement Agreement dated April 18, 2025 between Settlement Class Representatives and Defendants Save Mart Supermarkets and Save Mart Select Retiree Health Benefit Plan (together, "Defendant" or "Save Mart"); (ii) confirming certification of the Settlement Class that was defined in the Court's June 11, 2025 Order Granting Preliminary Approval of Class Action Settlement as: "All people who were participants in the Save Mart Select Retiree Health Benefit Plan as of June 30, 2022, all people who retired and met the Eligibility Criteria at any time on or after April 22, 2022, and all current Save Mart employees who have not yet retired but have otherwise met the Eligibility Criteria"; (iii) confirming appointment of Plaintiffs as Settlement Class Representatives; (iv) confirming appointment of Lieff Cabraser Heimann & Bernstein, LLP, Bolt Keenley Kim LLP, and the Matern Law Group, P.C. as Settlement Class Counsel; (v) finding Notice to the Settlement Class was directed and completed in a reasonable manner; and (vi) entering final judgment as to Save Mart in this Action.

Plaintiffs' motion is based upon this Notice of Motion, the Memorandum of Points and Authorities set forth below, the Declaration of Anne B. Shaver ("Shaver Decl."), and all exhibits thereto, the Settlement Agreement and all exhibits thereto, the Plan of Distribution, the Notice, the pleadings and records on file in this Action, and other such matters and argument as the Court may consider at the hearing of this Motion.

---

[1] Unless otherwise defined, capitalized terms in this Notice of Motion and Motion have the same meaning as in the Settlement Agreement, ECF No. 115-2.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Having successfully implemented the Notice program as approved by the Court, and having received an overwhelmingly positive response from the Settlement Class, Settlement Class Representatives respectfully request that the Court grant final approval to the settlement as fair, reasonable, and adequate. The Settlement Agreement, which provides $20,545,000 to compensate 669[2] Settlement Class Members for Save Mart's alleged violations of ERISA, represents substantial and meaningful relief that treats all Settlement Class Members equitably. The settlement was reached by experienced and competent Settlement Class Counsel in light of litigation risks and the financial realities of Save Mart's business. Settlement Class Representatives distributed the Notice to Settlement Class Members in accordance with the procedures preliminarily approved by this Court, and they received near-unanimous approval from Settlement Class Members: no Settlement Class Members opted out, and only two (constituting 0.3% of the Settlement Class) filed an objection. Shaver Decl. ¶ 24. For their efforts, Settlement Class Counsel and Settlement Class Representatives have separately asked for reasonable Attorneys' Fees, reimbursement of Litigation Expenses, and Service Awards (ECF No. 124), all of which they disclosed to Settlement Class Members in the Notice and to which no Settlement Class Member objected (Shaver Decl. ¶ 10).

Certification of the Settlement Class is still appropriate under Federal Rule of Civil Procedure 23 (as the Court previously found at preliminary approval); the settlement is fair, reasonable, and adequate; and Notice was reasonably and adequately provided to Settlement Class Members. Accordingly, Settlement Class Representatives respectfully request that the Court grant final approval to the settlement.

---

[2] The number of known Settlement Class Members has changed from 664, as reported in Settlement Class Counsel's Motion for Attorneys' Fees (ECF No. 124-1 at 5, n.3), to 669 as a result of: newly identified Settlement Class Members (ECF No. 127 at 2); individuals who identified themselves to the Settlement Administrator as potential Settlement Class Members (ECF No. 124-1 at 5, n.3), and had that dispute resolved in their favor (Shaver Decl. ¶¶ 21, 23); and removal from the Settlement Class of individuals who were deceased prior to the termination of the Plan (*id.* ¶¶ 22-23). It is possible that further disputes will arise between today and the dispute deadline (ECF No. 115-2 at 3). Once the Settlement Administrator receives and resolves all disputes, the final number of Settlement Class Members will be known.

## II.    BACKGROUND

### A.    Factual Background and Procedural History through Preliminary Approval

Settlement Class Representatives described this case's full factual background and procedural history in their Motions for Preliminary Approval (ECF No. 115), and for Attorneys' Fees, Litigation Expenses, and Service Awards (ECF No. 124). Those materials include the Settlement Agreement (ECF No. 115-2), the Notice that the Settlement Administrator sent to Settlement Class Members (ECF No. 115-3), the Plan of Distribution that will determine each Settlement Class Member's Settlement Share (ECF No. 115-4), comparable class action settlements (ECF No. 115-5), and Settlement Class Counsel's and Settlement Class Representatives' declarations outlining their qualifications and involvement in this litigation (ECF Nos. 115-1, 115-7, 115-8, 124-1, 124-5, 124-8, 124-10, 124-11, 124-12, 124-13). Below is a brief summary of this Action's history.

Settlement Class Representatives filed this Action on August 11, 2022, alleging that Save Mart misrepresented the duration of retiree medical benefits available under the Save Mart Select Retiree Health Benefit Plan (the "Plan"). ECF No. 1. Settlement Class Representatives filed their First Amended Complaint ("FAC") on November 22, 2022 to add additional allegations about the misrepresentations Save Mart made. ECF No. 24, ¶¶ 21-26. On April 7, 2023, Judge Orrick denied Save Mart's motion to dismiss the FAC. ECF No. 37.

Following the denial of Save Mart's motion to dismiss, the parties exchanged 14,505 documents and multiple rounds of interrogatories. ECF No. 124-1, ¶¶ 6-7. Settlement Class Representatives took a Rule 30(b)(6) deposition of Save Mart. *Id.* ¶ 6. Save Mart took depositions of the Settlement Class Representatives, five former Save Mart Human Resources representatives, and sixteen absent class members. *Id.* ¶ 7. Save Mart also served requests for admission on Settlement Class Representatives. *Id.* ¶ 6. Finally, Settlement Class Representatives served subpoenas on third parties and noticed two additional depositions of Save Mart employees. *Id.*

Based on information learned during discovery, Settlement Class Representatives filed the Second Amended Complaint ("SAC") on February 27, 2024 to add a claim for improper termination and benefits due under the Plan. ECF No. 70; ECF No. 124-1, ¶ 5. Save Mart filed an

answer to the SAC on March 12, 2024. ECF No. 74.

Settlement Class Representatives moved for class certification on July 3, 2024. ECF No. 79. As exhibits to their motion, Settlement Class Representatives filed excerpts of their Rule 30(b)(6) deposition; fifty-six declarations from Settlement Class Representatives, former Save Mart Human Resources representatives, and absent class members; and twenty-four documents produced in discovery. ECF Nos. 79-2 through 79-82. Save Mart filed its opposition on September 19, 2024 with seventy-two attachments of its own. ECF Nos. 100-1 through 100-72. Those attachments included appendices, deposition transcripts, and documents produced in discovery. *Id.* Settlement Class Representatives filed a reply on October 17, 2024, including six appendices and twenty-five deposition transcripts. ECF Nos. 104, 104-2 through 104-32. The motion was taken off calendar pending the parties' settlement negotiations. ECF No. 109.

On November 6, 2024, the parties engaged mediator Margaret Levy for an all-day mediation session. ECF No. 124-1, ¶ 11. Although that session did not result in a settlement, the parties continued negotiating under Ms. Levy's supervision. *Id.* ¶ 12. They reached a full and final Settlement Agreement on April 18, 2025. *Id.* ¶ 15; *see also* ECF No. 115-2 (Settlement Agreement). After a hearing on Settlement Class Representatives' Motion for Preliminary Approval, the Court preliminarily approved the Settlement Agreement on June 11, 2025. ECF No. 122.

### B.    Notice and Settlement Administration

On July 7, 2025, CPT Group, Inc. ("CPT")—the Court's appointed Settlement Administrator—mailed the Notice to Settlement Class Members. Shaver Decl. ¶ 14. CPT also emailed the Notice to Settlement Class Members for whom Save Mart and Settlement Class Representatives had email addresses. *Id.* ¶ 15. Additionally, CPT mailed and emailed the Notice again to certain Settlement Class Members who provided updated mailing and email addresses to CPT or to Settlement Class Counsel after the notice distribution progress commenced. *Id.* ¶ 18. CPT reports that this notice program reached all but three Settlement Class Members. *Id.* ¶ 20.

During notice distribution, CPT and Settlement Class Counsel fielded questions from current and former Save Mart employees about the terms of the settlement and Settlement Class membership. Shaver Decl. ¶ 21. CPT is working with counsel for Save Mart to review individuals'

data and adjudicate class membership disputes. *Id.*

In addition to providing the Notice and fielding questions, CPT created and continues to maintain a case-specific website where Settlement Class Members can learn more about the settlement and contact CPT. Shaver Decl. ¶ 16. The URL for that website is SaveMartSettlement.com. *Id.* CPT also created and continues to maintain a toll-free telephone number (1-888-330-4040) and an email address (SaveMartSettlement@cptgroup.com) that Settlement Class Members may use to ask questions or learn more about the settlement. *Id.*

CPT was also responsible for receiving and processing any opt-out statements or notices of objection. ECF No. 115-2 at 15-18. The Court-ordered opt-out and objection deadline was August 10, 2025. ECF No. 122, ¶ 7. CPT received two objections and zero opt-out requests. Shaver Decl. ¶ 24. As provided in the Settlement Agreement, CPT will provide a declaration detailing its diligent efforts to provide effective notice, as well as the costs of settlement administration to date and anticipated future costs, and attaching copies of all opt-out requests and objections. ECF No. 115-2 at 18. Settlement Class Counsel will file CPT's declaration with the Court by September 9, 2025. *Id.*

Pursuant to the Parties' Stipulated Request for Approval of Supplemental Notice, which the Court granted on August 21, 2025 (ECF No. 127), CPT mailed Supplemental Notice to four additional Settlement Class members on August 25, 2025. Shaver Decl. ¶ 25. The deadline for these individuals to opt out of or object to the settlement is September 12, 2025. ECF No. 127 at 3. Settlement Class Counsel will file an update with the Court on September 15, 2025 certifying compliance with the Supplemental Notice program and lodging any opt out requests or objections therefrom. *Id.*

## III.    **LEGAL STANDARD**

The Ninth Circuit maintains "a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008). When parties settle a class action prior to class certification, courts must "ratify both the propriety of the certification and the fairness of the settlement." *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liability Litig.*, 895 F.3d 597, 606 (9th Cir. 2018)

(citation omitted). This requires courts to "assess whether a class exists," and if so, to assess "whether the proposed settlement is fundamentally fair, adequate, and reasonable." *Cottle v. Plaid Inc.*, 340 F.R.D. 356, 370 (N.D. Cal. 2021) (internal quotation marks and citations omitted).

On a motion for final approval, courts assess whether (1) the settlement class merits certification under Federal Rules of Civil Procedure 23(a) and (b); (2) the settlement is fair, reasonable, and adequate; and (3) the notice provided was adequate. *See Harbour v. Cal. Health & Wellness Plan*, No. 21-cv-03322, 2024 WL 171192, at *3 (N.D. Cal. Jan. 16, 2024) ("A court may approve a proposed class action settlement of a certified class only 'after a hearing and on finding that it is fair, reasonable, and adequate,' and that it meets the requirements for class certification."); *Rodriguez v. Danell Custom Harvesting, LLC*, 293 F. Supp. 3d 1117, 1135 (E.D. Cal. 2018) ("Adequate notice is critical to court approval of a class settlement under Rule 23(e).").

## IV.    ARGUMENT

All of the relevant factors strongly support certification of the Settlement Class; confirmation of the settlement as fair, reasonable, and adequate; and approval of the notice plan as reasonable and adequate.

### A.    The Settlement Class Meets the Criteria for Certification.

The Settlement Class must satisfy the four preconditions of Rule 23(a), and one of the bases for certification under Rule 23(b). Fed. R. Civ. P. 23. Settlement Class Representatives contend, and Save Mart does not dispute for settlement purposes, that the Settlement Class meets the requirements for class certification under Rules 23(a) and (b)(3).[3]

#### 1.    The Requirements of Rule 23(a) Are Satisfied.

Under Rule 23(a), a class must satisfy four preconditions: numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a)(1)-(4). Here, the Settlement Class satisfies all four.

**Numerosity.** Under Rule 23(a)(1), numerosity is satisfied if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The Settlement Class consists of

---

[3] Because the Settlement Class satisfies Rule 23(b)(3)'s more demanding predominance and superiority requirements, the Class would also readily satisfy the requirements of Rules 23(b)(1) and 23(b)(2). *See, e.g., Moyle v. Liberty Mut. Ret. Benefit Plan*, Case No. 10cv2179 DMS (BLM), 2012 WL 13149097, at *10-11 (S.D. Cal. Apr. 10, 2012) (certifying a class under Rule 23(b)(3) and, alternatively, Rule 23(b)(1)).

669 members, satisfying numerosity. Shaver Decl. ¶ 6; *Ellis v. Costco Wholesale Corp.*, 285 F.R.D. 492, 506 (N.D. Cal. 2012) ("100 or more plaintiffs leads to a presumption of numerosity").

**Commonality.** "The requirement of 'commonality' means that class members' claims 'must depend upon a common contention' and that the 'common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150, 1153 (9th Cir. 2016) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). "To satisfy Rule 23(a)(2) commonality, even a single common question will do." *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1133 (9th Cir. 2016) (cleaned up).

Settlement Class Representatives' "Benefits Due Claim" alleges that Save Mart failed to properly terminate the Plan benefits according to the relevant procedural requirements, and therefore owes Plan participants the benefits that Save Mart should have paid from June 2022 to the present pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). SAC ¶¶ 42-48, 100-113. The Benefits Due Claim raises a single common liability question: whether Save Mart properly terminated the retiree medical benefits in compliance with Plan terms. This is a question of law, the answer to which cannot vary between Settlement Class Members because it focuses entirely on the conduct of Save Mart. Because the answer to this common question will "drive the resolution of the [claim]," class certification of the Benefits Due Claim is appropriate. *Dukes*, 564 U.S. at 350.

Settlement Class Representatives' "Misrepresentation Claim" alleges that Save Mart breached its fiduciary duty by misrepresenting the terms of the Plan under ERISA § 404(a)(1), 29 U.S.C. § 1321(a)(1). SAC ¶¶ 23-41, 94-99. Specifically, Settlement Class Representatives allege that Save Mart promised its non-union employees that Plan benefits would last for the life of the retiree and would always be as good as or better than the union benefits, when in fact the Plan's terms allowed Save Mart to terminate the benefit at its election. *Id*. The Misrepresentation Claim raises common questions, the answers to which focus entirely on the conduct of Save Mart. *See In re Computer Scis. Corp. ERISA Litig.*, No. CV 08–02398 SJO (JWJx), 2008 WL 7527872, at *2 (C.D. Cal. Dec. 29, 2008) ("*CSC I*") ("[T]he appropriate focus of a breach of fiduciary duty claim

under ERISA is the conduct of the defendants, not the plaintiffs."). First, was Save Mart acting as a fiduciary at the times it characterized the Plan's terms to employees? Second, did Save Mart's statements and omissions misrepresent the Plan's terms? Third, were the misrepresentations material? The answer to all of these questions is binary—yes or no—and all will be answered for every Settlement Class Member in the same way. *See, e.g.*, *Hurtado v. Rainbow Disposal Co., Inc.*, No. 8:17-cv-01605-JLS-DFM, 2019 WL 1771797, at *6-7 (C.D. Cal. Apr. 22, 2019); *Moyle v. Liberty Mut. Ret. Ben. Plan*, No. 10-2179 DMS, 2012 WL 13149097, at *3-8 (S.D. Cal. Apr. 10, 2012), *aff'd* 823 F.3d 948 (9th Cir. 2016); *CSC I*, 2008 WL 7527872, at *2; *Osberg v. Foot Locker, Inc.*, No. 07-1358 (KBF), 2014 WL 5796686, at *3 (S.D.N.Y. Sept. 24, 2014) (collectively, finding commonality satisfied as to these factors and certifying classes in ERISA misrepresentation cases).

**Typicality.** Under Rule 23(a)(3), "representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014). Settlement Class Representatives' claims easily satisfy this standard. Settlement Class Representatives suffered the same harm as did all Settlement Class Members: Save Mart took away their retiree medical benefits after representing to them that those benefits would last for life. "[Settlement Class Representatives'] claims are typical of the proposed class because they focus on the conduct of [Save Mart] as to the [Class] as a whole and not on conduct specific to any particular [Settlement Class Representative]." *Hurtado*, 2019 WL 1771797, at *8; *see also CSC I*, 2008 WL 7527872, at *2 ("[B]ecause the Complaint contains allegations of plan-wide misrepresentations and non-disclosures, which by definition were not individualized, and the class seeks recovery for the Plan as a whole on the basis of these plan-wide misrepresentations and non-disclosures, Settlement Class Representatives' claims are accordingly typical of those of the class as a whole.") (cleaned up); *Moyle*, 2012 WL 13149097, at *8 (same); *Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 110 (N.D. Cal. 2008) (same).

**Adequacy.** Rule 23(a)(4) involves two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Moyle*, 2012 WL 13149097, at *9. Settlement Class Representatives and Settlement Class Counsel meet both

requirements. First, Settlement Class Representatives and Settlement Class Counsel have no conflicts of interest with any members of the Settlement Class. Rather, their interests are entirely aligned: Settlement Class Representatives and the Settlement Class share a common interest in maximizing the Class Settlement Amount.

Second, Settlement Class Representatives and Settlement Class Counsel have vigorously prosecuted this action on behalf of the Settlement Class. As attested to in detail in Settlement Class Representatives' and Settlement Class Counsel's declarations in support of their Motion for Attorneys' Fees, Litigation Expenses, and Service Awards, Settlement Class Representatives and Settlement Class Counsel devoted substantial time and resources throughout this litigation. ECF Nos. 124-1, 124-5, 124-8, 124-10, 124-11, 124-12, 124-13. They defeated Save Mart's motion to dismiss, engaged in intensive and multifaceted discovery, amended their pleadings as discovery uncovered new facts and claims, participated in an all-day mediation, negotiated the Settlement Agreement, prepared the papers necessary to seek and obtain preliminary approval, and are assisting in the settlement administration process, including by responding to Settlement Class Member inquiries as needed. ECF No. 124-1, ¶¶ 4-20, 22-26; ECF No. 124-10, ¶¶ 7-20; ECF No. 124-11, ¶¶ 6-20; ECF No. 124-12, ¶¶ 5-19; ECF No. 124-13, ¶¶ 5-19. Furthermore, Settlement Class Counsel have extensive experience litigating, trying, and settling class actions, including complex cases arising under ERISA, and are well-qualified to represent the Settlement Class. ECF No. 124-1, ¶¶ 44-52; ECF No. 124-5, ¶¶ 2-6; ECF No. 124-8, ¶¶ 7-13. Adequacy is satisfied. The Court should therefore confirm appointment of the named Plaintiffs as Settlement Class Representatives and appointment of Lieff Cabraser Heimann & Bernstein, LLP; Bolt Keenley Kim LLP; and Matern Law Group P.C. as Settlement Class Counsel. *See* ECF No. 122 at 2 ("The Court hereby appoints Plaintiffs Katherine Baker, José Luna, Edgar Popke, and Denny G. Wraske, Jr. as Class Representatives. Under Rule 23(g)(3), the Court hereby appoints Lieff Cabraser Heimann & Bernstein, LLP; Bolt Keenley Kim LLP; and Matern Law Group P.C. as Settlement Class Counsel.").

### 2.    Class Certification Is Appropriate Under Rule 23(b)(3).

Certification is appropriate under Rule 23(b)(3) where (1) common questions predominate

over questions affecting only individual members, and (2) class resolution is superior to other available methods for the fair and efficient adjudication of claims. Fed. R. Civ. P. 23(b)(3).

**Predominance.** In the context of the predominance inquiry, "an individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof." *Ruiz Torres*, 835 F.3d at 1134 (cleaned up). "Predominance is not, however, a matter of nose-counting. . . . It is an assessment of whether [the] proposed classes are sufficiently cohesive to warrant adjudication by representation." *Id*. (cleaned up).

Here, common questions predominate with respect to the Benefits Due Claim. Indeed, the entire claim rises or falls on the common question of whether Save Mart took the steps necessary to legally terminate the retiree medical benefit in accordance with the Plan's terms. For the Misrepresentation Claim, "common issues predominate over individual issues because Defendants' representations to the putative class were uniform and even reliance and materiality are susceptible to class-wide proof." *Moyle*, 2012 WL 13149097, at *11; *see also CSC I*, 2008 WL 7527872, at *4 (finding that the "overriding common issues" of whether defendants were fiduciaries and whether they breached their fiduciary duties would predominate over any individual questions); *Fremont General Corp. Litig.*, No. 2:07-cv-02693-JHN-FFMx, 2010 WL 3168088, at *7 (C.D. Cal. Apr. 15, 2010) ("As a common nucleus of facts and potential legal remedies involves the conduct Defendants took, or failed to take, in this action, Plaintiffs' claims are generally homogenous and suitable for adjudication by representation."). As set forth extensively in Plaintiffs' Motion for Class Certification, Save Mart made numerous common, classwide misrepresentations about the Plan, including written and oral communications from the Human Resources Department, written benefits summaries, and promises from its senior executive staff at large gatherings of employees. ECF No. 79 at 7-15. These uniform representations to Settlement Class Members constitute the generalized, class-wide proof that satisfies predominance.

**Superiority.** A class action is also a superior method for resolution of this case, measured by (A) the class members' interest in individually controlling the prosecution or defense of separate

actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; and (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum.[4] Fed. R. Civ. P. 23(b)(3). The first factor is met because the cost of litigating a complex case of this kind dwarfs the value of the relief an individual class member could obtain. The second factor is met because there is no other litigation. Shaver Decl. ¶ 12. The third factor is met because concentrating the claims in this District is desirable as Save Mart operates throughout the District and many Settlement Class Members live here. Thus, settling this as a class action case is far superior to litigating hundreds of individual actions.

### B.    The Settlement Is Fundamentally Fair, Reasonable, and Adequate.

Because Settlement Class certification is proper, the Court should next assess whether final approval is proper under Rule 23(e)(2) and the Northern District of California's class action guidance. The Court preliminarily approved the settlement's fairness. ECF No. 122 at 2. Specifically, the Court found that "[t]he proposed settlement appears to be the product of intensive, thorough, serious, informed, and non-collusive negotiations; has no obvious deficiencies; does not improperly grant preferential treatment to the Class Representatives or segments of the Settlement Class; and appears to be fair, reasonable, and adequate." *Id.* Nothing has changed since preliminary approval that would affect the Court's fairness analysis. Accordingly, the Court should grant final approval of the settlement as fair, reasonable, and adequate.

### 1.    The Rule 23(e)(2) Requirements Are Met.

Rule 23(e)(2) requires courts to consider whether: "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other." Fed. R.

---

[4] The Rule 23(b)(3)(D) factor—the likely difficulties of managing a class action—does not apply in the settlement context. *See In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556-57 (9th Cir. 2019) ("[M]anageability is not a concern in certifying a settlement class where, by definition, there will be no trial.").

Civ. P. 23(e)(2). Here, all requirements are met.

**Rule 23(e)(2)(A)**, regarding adequacy of representation, is satisfied for the same reasons Federal Rule of Civil Procedure 23(a)(4) is satisfied. *See supra* Section IV.A.1.

**Rule 23(e)(2)(B)**, regarding negotiations, remains satisfied. Under this Rule, courts determine whether there are "'subtle signs that class counsel have allowed pursuit of their own self-interests . . . to infect the negotiations.'" *Briseño v. Henderson*, 998 F.3d 1014, 1023 (9th Cir. 2021) (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011)). Courts consider the following factors in making that determination: "(1) when counsel receive a disproportionate distribution of the settlement or when the class receives no monetary distribution but class counsel are amply rewarded; (2) when the payment of attorneys' fees is separate and apart from class funds; and (3) when the parties arrange for benefits that are not awarded to the class fund." *Cottle*, 340 F.R.D. at 376 (internal quotation marks and citation omitted).

This Rule remains satisfied because, as the Court found at the preliminary approval stage, the settlement is "the product of intensive, thorough, serious, informed, and non-collusive negotiations." ECF No. 122 at 2. The settlement is the result of six months of negotiations, including a full-day mediation session and subsequent follow-up with experienced mediator Margaret Levy. ECF No. 115-1, ¶ 11. Settlement Class Counsel will not receive a disproportionate amount of the settlement; their request for 30 percent of the Settlement Fund—amounting to a lodestar multiplier of 1.48—is in line with similar awards made in the Ninth Circuit. *See* ECF No. 124 at 8-20 (detailing authorities); *Foster v. Adams & Assocs., Inc.*, Case No. 18-cv-02723-JSC, 2022 WL 425559, at *10 (N.D. Cal. Feb. 11, 2022) (awarding 33.3 percent for ERISA claims); *Hurtado v. Rainbow Disposal Co., Inc.*, No. 8:17-cv-01605, 2021 WL 2327858, at *4 (C.D. Cal. May 21, 2021) (awarding 30 percent for ERISA claims); *In re Cal. Gasoline Spot Mkt. Antitrust Litig.*, No. 3:20-cv-03131-JSC, 2025 WL 822665, at *10 (N.D. Cal. Mar. 14, 2025) (awarding 30 percent in antitrust class action); *Martinelli v. Johnson & Johnson*, No. 2:15-cv-01733-MCE-DB, 2022 WL 4123874, at *9 (E.D. Cal. Sept. 9, 2022) (awarding 33.3 percent in consumer class action); *Freeze v. PVH Corp.*, No. CV 19-1694 PSG (Ex), 2021 WL 2953161, at *11 (C.D. Cal.

Jan. 7, 2021) (awarding 33.3 percent in wage and hour class action); *Shannon v. Sherwood Mgmt. Co, Inc.*, No. 19-cv-1101-BAS-JLB, 2020 WL 5891587, at *3 (S.D. Cal. Oct. 5, 2020) (awarding 30 percent in employment class action); *see also Gutierrez v. Amplify Energy Grp.*, No. 8:21-CV-01628-DOC(JDEx), 2023 WL 6370233, at *6 (C.D. Cal. Sept. 14, 2023) ("In the Ninth Circuit, a [lodestar] multiplier ranging from 1.0 to 4.0 is considered 'presumptively acceptable.'") (quoting *Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 334 (N.D. Cal. 2014). Furthermore, no part of the Class Settlement Amount will revert to Save Mart. Instead, any leftover funds will be distributed to Settlement Class Members in a second distribution, with any unclaimed funds after the second distribution going to the designated *cy pres* recipient, the American Association of Retired Persons. ECF No. 115-2 at 11. Thus, for the same reasons this rule was satisfied at preliminary approval, so too is it satisfied for purposes of final approval.

**Rule 23(e)(2)(C)** looks at the adequacy of relief. Courts consider "the complete package taken as a whole, rather than the individual component parts." *Officers for Just. v. Civ. Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982). Furthermore, "it is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004).

According to calculations that Settlement Class Representatives' actuary performed, the Class Settlement Amount represents a recovery of 46 percent of Settlement Class Representatives' best-case estimate of the present value of the HRA benefits. ECF No. 115-1, ¶ 15.That percentage recovery is significantly higher than other ERISA class action settlements recently approved in this District. *See, e.g.*, *Foster*, 2022 WL 425559, at *5 (granting final approval to ERISA class action settlement that represented "approximately 28.5% of the maximum amount of the loss determined by Plaintiffs' expert," and collecting ERISA class action settlement cases with recoveries ranging between 3.2% and 30%). The settlement also represents a far higher per-Settlement Class Member gross recovery (i.e., $30,170.01) than settlements in cases involving similar claims. Shaver Decl. ¶ 6; *see, e.g.*, *Blenko v. Cabell Huntington Hosp., Inc.*, No. 3:21-0315, 2022 WL 3229968, at *7 (S.D.W.V. Aug. 10, 2022) ($4,974,500 for 211 class members—or $23,575.83 per class member);

*Hurtado*, 2021 WL 2327858, at *1 ($7.9 million for 460 class members—or $17,173.91 per class member); *Pfeifer v. Wawa, Inc.*, No. 16-497, 2018 WL 4203880, at *4, 6 (E.D. Pa. Aug. 31, 2018) ($25 million for 1,260 class members—or $19,841.27 per class member); *Foster*, 2022 WL 425559, at *2, *5 ($3 million for 3,561 class members—or $842.46 per class member). The settlement is particularly favorable in light of Save Mart's current financial situation: it represents 15 percent of Save Mart's total value as a company per publicly available information. *See* ECF No. 124-1, ¶¶ 41-43 (describing Save Mart's recent company valuations). Because the settlement provides meaningful relief to Settlement Class Members, exceeds the value of comparable ERISA class action settlements, and represents a substantial percentage of Save Mart's total company value, this factor is satisfied.

**Rule 23(e)(2)(C)(i)** examines the costs, risks, and delay of trial and appeal. Settlement Class Representatives are confident in the strength of their claims and their ability to prevail at trial, but also recognize that their claims are risky from a legal and factual perspective. Regarding the Misrepresentation Claim, very few Ninth Circuit cases address misrepresented lifetime retiree medical benefits. *See, e.g.*, *Warmenhoven v. NetApp, Inc.*, 13 F.4th 717, 727 (9th Cir. 2021) (citing Sixth Circuit precedent to analyze a misrepresented lifetime retiree medical benefit). Furthermore, many of the misrepresentations that support the Misrepresentation Claim date back to the early 1980s and were oral rather than written, which required Settlement Class Representatives to collect testimony from 56 witnesses. *See* ECF Nos. 79-3 through 79-58 (declarations attesting to misrepresentations). Regarding the Benefits Due Claim, which relies on an absence of a legally sufficient written instrument terminating the retiree medical benefits, courts disagree on what constitutes a sufficient written instrument. *Compare Huber v. Casablanca Indus., Inc.*, 916 F.2d 85, 106 (3d Cir. 1990) (finding meeting minutes were a proper plan amendment) *with Depenbrock v. Cigna Corp.*, 389 F.3d 78, 82-83 (3d Cir. 2004) (rejecting that amendment occurred when the company's CEO approved "a summary" of the amendment and instead only occurred when "the written amendment was executed and formally adopted"). Furthermore, the Benefits Due Claim was always at risk of Save Mart producing a sufficient written instrument in discovery, which it tried to do in 2024, and which would have cut off liability for that claim in 2024 if the Court

accepted the proffered instrument as legally sufficient. *See* ECF No. 79-61 at SAVEMART00106473 (purportedly ratifying the termination of the Plan effective June 30, 2022 or, in the alternative, April 30, 2024).

Without the settlement, Settlement Class Representatives would have continued litigating their claims through class certification, summary judgment, and trial. Throughout this litigation, Save Mart raised substantial challenges to Settlement Class Representatives' claims, and it would almost certainly do so again at every subsequent stage of the proceedings. *See* ECF No. 99 (Save Mart's opposition to Plaintiffs' motion for class certification); ECF No. 37 at 14 n.6 (the Court's order denying Save Mart's motion to dismiss, holding that "Save Mart's [statute of limitations] argument may carry more weight as this case develops and discovery sheds further light on the facts"). In any event, class certification, summary judgment, other pre-trial motions, trial, and potentially subsequent appeals would take years to resolve.

Assuming that Settlement Class Representatives were successful through trial and won any subsequent appeals, there is no guarantee they would recover the full amount of the Settlement Class's damages. In fact, there is no guarantee they would recover even the amount obtained in this settlement. Throughout this litigation, Save Mart has argued that it retained the right to modify the retiree medical benefits, even to *de minimus* amounts. ECF No. 25 at 22; ECF No. 31 at 12-13; *see also* ECF No. 124-1, ¶ 8 (describing questions asked by Save Mart at depositions to support this argument). Because courts have wide discretion to fashion equitable remedies under ERISA, a court could decide that the Settlement Class is not entitled to the full amount of prayed-for relief for the Misrepresentation Claim, but instead some lesser value deemed "equitable" in light of Save Mart's ability to modify benefits. In that case, the court may award relief less than what the settlement provides. Save Mart further argued that even if Settlement Class Representatives prevailed as to breach on their Misrepresentation Claim, they are not entitled to any form of equitable relief and are unable to recover compensatory damages as a matter of law (ECF No. 25 at 15-18). If Save Mart succeeded on this theory, the Settlement Class would end up proving they were the victims of a breach of fiduciary duty without obtaining any redress for that breach. As to the Benefits Due Claim, Save Mart could always try to cut off liability by executing a legally valid written instrument

terminating the retiree medical benefits, which indeed it purported to do in 2024. ECF No. 79-61. Furthermore, Save Mart repeatedly raised statute of limitations arguments that, if accepted by the Court, would deny all relief to the Settlement Class. ECF No. 99.

Finally, given Save Mart's current financial situation, the aging Settlement Class of which the vast majority are already retired, and the fact that a number of Settlement Class Members have already passed away (ECF No. 124-1, ¶¶ 9, 41-43), there is no guarantee that Settlement Class Members would receive, or Save Mart would be able to provide, relief for their claims. All of these risks support final approval of the Settlement Agreement.

**Rule 23(e)(2)(C)(ii)** focuses on the effectiveness of distribution, including the notice and the plan of distribution. *Cottle*, 340 F.R.D. at 377; *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998) ("Adequate notice is critical to court approval of a class settlement under Rule 23(e)."). The Settlement Administrator has mailed and emailed the Notice to each Settlement Class Member, using contact information maintained by Save Mart and contact information provided by Settlement Class Members themselves. Shaver Decl. ¶¶ 14-15. The Settlement Administrator also re-mailed and re-emailed the Notice to Settlement Class Members as appropriate. *Id.* ¶¶ 17-19. The Notice reached the vast majority of Settlement Class Members— 99.5 percent. *Id.* ¶ 20. The Settlement Administrator has maintained and will continue to maintain a toll-free number, email address, and case-specific website to address Settlement Class Member inquiries and questions. *Id.* ¶ 16. Settlement Class Members will not need to submit a claim to receive payment; all participating Settlement Class Members will automatically receive a check in the first and second distributions. *Id.* ¶ 7. Given the success of the notice plan and the simple distribution process that will follow final approval, the proposed Notice and plan to distribute relief to the Settlement Class Members are effective, and final approval of the settlement is appropriate. *See Cottle*, 340 F.R.D. at 377-78.

**Rule 23(e)(2)(C)(iii)** evaluates attorneys' fees and requires courts to determine whether "the record suggests that settlement is driven by fees; that is, when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded." *Cottle*, 340 F.R.D. at 378 (citation omitted). As an initial

matter, the settlement is not dependent on an award of Attorneys' Fees or Litigation Expenses—it is an explicit provision of the Settlement Agreement that it shall proceed regardless of the Court's award of same. ECF No. 115-2 at 9. Settlement Class Counsel seek only 30 percent of the Settlement Fund as Attorneys' Fees, amounting to a lodestar of 1.48, which is at the lower end of this District's "presumptively reasonable" range. ECF No. 124 at 20-21; *Gutierrez*, 2023 WL 6370233, at *6. Regarding Litigation Expenses, Settlement Class Counsel requested reimbursement of only those expenses necessarily incurred to prosecute this litigation and obtain the settlement. ECF No. 124 at 21-22. This factor is therefore satisfied.

**Rule 23(e)(2)(C)(iv)** is satisfied because there is no agreement between Settlement Class Representatives and Save Mart other than the Settlement Agreement. Shaver Decl. ¶ 11.

**Rule 23(e)(2)(D)** is satisfied because the Settlement Agreement and the Plan of Distribution treat all Settlement Class Members equitably. The Settlement Administrator has applied the same formula to calculate each Participating Settlement Class Member's estimated distribution. Shaver Decl. ¶ 7. The Settlement Administrator included each Settlement Class Member's estimate in the personalized Notice sent to each of them. *Id.* ¶ 14. The Settlement Administrator will use the same formula when calculating distribution shares. *Id.* ¶ 7. The formula adheres to generally accepted actuarial principles and will account for each Settlement Class Member's estimated present value of HRA benefits. *Id.* The effect of these calculations is to provide every Settlement Class Member with their expected lifetime retiree medical benefits, discounted by the exact same litigation risk factor for all Settlement Class Members. Because the Settlement Agreement applies the same formula to every Settlement Class Member, and also "ties Class Members' recovery to their potential damages," the Settlement Agreement treats all Settlement Class Members equitably. *Barr v. SelectBlinds LLC*, Case No. 2:22-cv-08326-SPG-PD, 2024 WL 5162609, at *8 (C.D. Cal. Mar. 4, 2024); *see also In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 332 (N.D. Cal. 2018) ("A plan of allocation that reimburses class members based on the type and extent of their injuries is generally reasonable. . . . [A]n allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel.") (citations omitted).

2. **The Northern District Guidance Supports Approval.**

**Guidance 1—Class Members' Response.**[5] The Settlement Administrator mailed the Notice to every Settlement Class Member. Shaver Decl. ¶ 14. The Settlement Administrator also emailed the Notice to every Settlement Class Member for whom the parties had an email address. *Id.* ¶ 15. Furthermore, the Settlement Administrator re-mailed and re-emailed the Notice to Settlement Class Members as appropriate, including when Settlement Class Members reached out to it or to Settlement Class Counsel with their updated contact information. *Id.* ¶¶ 17-19. Following this process, Notice was provided to all but three Settlement Class Members, resulting in zero opt-outs and only two objections. *Id.* ¶¶ 20, 24. The support of the Settlement Class supports final approval. *See Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1121 (9th Cir. 2020) (a positive "reaction of the class members to the proposed settlement" indicates its fairness) (quoting *Hanlon*, 150 F.3d at 1026).

**Guidance 2—Attorneys' Fees.** This Guidance is addressed above, under Federal Rule of Civil Procedure 23(e)(2)(C)(iii). For the reasons above, this Guidance supports final approval.

**Guidance 3—Service Awards.** As explained in the Motion for Attorneys' Fees, Litigation Expenses, and Service Awards, Settlement Class Representatives' requested Service Award of $25,000 each is appropriate given their contributions to the result achieved here, and is in line with awards made in comparable ERISA class action settlements within the Ninth Circuit. ECF No. 124 at 24-25; *see also Marshall v. Northrop Grumman Corp.*, No. 2:16-cv-06794-AB-JC, 2020 WL 5668935, at *11 (C.D. Cal. Sept. 18, 2020). Furthermore, Settlement Class Representatives disclosed this request in their Notice, and they received no objections regarding Service Awards. Shaver Decl. ¶ 10. In any event, the settlement is not contingent on a grant of Service Awards. ECF No. 115-2 at 10. Given the amount of the requested Service Award, the Settlement Class's lack of objection to the requested Service Awards, and the fact that settlement approval is not contingent on granting Service Awards, this Guidance supports final approval.

---

[5] Settlement Class Representatives addressed the Northern District's guidance regarding preliminary approval in their Motion for Preliminary Approval. ECF No. 115 at 21-25.

### 3. **Class Member Objections Do Not Prevent Final Approval.**

The two objections the Settlement Administrator received[6] (attached to the Shaver Declaration as Exhibits A and B, respectively) do not render the settlement unfair, unreasonable, or inadequate.

Exhibit A is the objection of Glendal Forrest Richardson, who claims (1) he should not pay taxes on his settlement amount, (2) if he is required to pay taxes, that he should not be taxed within a single tax year, and (3) his Settlement Share is too low. Shaver Decl. Ex. A at 1. Regarding (1), taxation of the settlement payments is function of federal law outside the parties' control. Settlement Class Counsel thoroughly researched every available option regarding this issue, including consulting attorneys with expertise in this area of tax law during the settlement negotiation process. Shaver Decl. ¶ 8. They determined that the IRS will treat the portion of the Settlement Shares meant to compensate retirees for lost HRA benefits as taxable wages, notwithstanding that the original retiree medical benefits were not taxed. *Id.* Settlement Class Counsel secured a provision in the Settlement Agreement allocating two-thirds of settlement shares as intended to settle claims for benefits owed (and therefore subject to withholdings), and one-third as the interest portion due thereon (not subject to withholdings), which ameliorates the tax burden on Settlement Class members to the extent possible. ECF No. 115-2 at 23. As to (2), Mr. Richardson will receive his Settlement Share as a lump-sum payment, making it fair to account for all taxes in one tax year, as required by the IRS. *Id.* Mr. Richardson's tax-related objections pertain to IRS rulings on taxation of this type of recovery, which Settlement Class Counsel and Settlement Class Representatives do not have the power to change. For (3), Mr. Richardson's claims of inadequate compensation do not account for the actuarial analysis underpinning his calculation, the risk that litigation would have resulted in a lesser or zero recovery for him, or his ability to opt out. An

---

[6] Wesley Unruh submitted a letter to the Court that he described as an objection. ECF No. 125. However, Mr. Unruh's filing is in fact a request for inclusion in the Settlement Class, not an objection to the settlement itself. *See id.* ("I respectfully request that the Court and class counsel consider my situation and allow me to be included in the class or otherwise receive the benefits of the settlement."). Therefore, the Court docketed the letter not as an objection, but as a "REQUEST by Wesley Unruh to be included in Class Settlement." *Id.* In any event, as a non-Settlement Class Member, Mr. Unruh has no standing to file an objection. *In re TracFone Unlimited Serv. Plan Litig.*, 112 F. Supp. 3d 993, 1008 (N.D. Cal. 2015). CPT also received Mr. Unruh's request and is processing it the same way as all other Settlement Class eligibility disputes. Shaver Decl. ¶ 21.

actuarial expert used standard actuarial methods to calculate the full lifetime value of Mr. Richardson's individual HRA benefits expressed in present-day dollars, using the same methods for Mr. Richardson as for all other Settlement Class Members. *See* Shaver Decl. ¶ 7. The settlement achieves 46 percent of this present value for Mr. Richardson and all other Settlement Class Members—a far better outcome than has been achieved in similar litigation. *See supra* Section IV.B.1 (discussing Rule 23(e)(2)(C)). Mr. Richardson's objection also ignores the risks of continuing litigation. *See supra* Section IV.B.1 (discussing Rule 23(e)(2)(C)(i)). Nor does Mr. Richardson's objection address Settlement Class Members' ability to opt out and pursue higher individual recoveries if they wish—a path he could have taken but did not. *See* ECF No. 115-2 at VI.3 (describing the opt-out process). Courts in this District routinely overrule similar objections. *See, e.g.*, *In re College Athlete NIL Litig.*, No. 20-cv-03919, 2025 WL 1675820, at *35 (N.D. Cal. June 6, 2025) ("[T]he Court has found that Plaintiffs' damages allocations are fair and reasonable to all damages class members, and that they have an adequate basis in the economics analyses of Dr. Rascher, which reflect the extent of class members' injuries and the strength of their claims based on what class members would have received for their claims in the but-for world. That some objectors believe that more favorable allocations could have been achieved does not alter that conclusion, particularly given that members of the damages classes had the opportunity to opt out of the SA if they were dissatisfied with Plaintiffs' damages allocations.") (collecting cases); *Abante Rooter & Plumbing, Inc. v. Pivotal Payments Inc.*, No. 3:16-cv-05486, 2018 WL 8949777, at *7 (N.D. Cal. Oct. 15, 2018) (overruling objections to the amount of the settlement where "[t]he parties provided the Court with a thorough analysis of the risks Plaintiff faced in continued litigation and documentation supporting [defendant's] financial condition"); *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 592 (N.D. Cal. 2015) (overruling objections that individual settlement amounts were too low where settlement recovery was approximately 30 percent of maximum that could be recovered at trial); *Reyes v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, 281 F. Supp. 3d 833, 849 (N.D. Cal. 2017) (overruling objections, in an ERISA case, that "class members are receiving too little of the amounts to which they believe they are entitled" because "the settlement amount [is] reasonable given the risks and delay of further litigation"). Accordingly, the

1    Court should overrule Mr. Richardson's objection.

2          Exhibit B is the objection of Rex Dickenson, who objects only that his estimated Settlement

3    Share "is inadequate in [his] estimation[.]"[7] *Id.* at 1. The Court should therefore overrule Mr.

4    Dickenson's objection for the same reason it should overrule Mr. Richardson's objection: "That a

5    more favorable result for some Class Members could potentially have been reached is not a

6    sufficient reason to reject an otherwise fair and reasonable settlement." *Nwabueze v. AT&T Inc.*,

7    No. C 09–01529, 2013 WL 6199596, at *7 (N.D. Cal. Nov. 27, 2013); *see also Wren v. RGIS*

8    *Inventory Specialists*, No. C–06–05778, 2011 WL 1230826, at *12 (N.D. Cal. Apr. 1, 2011)

9    ("[C]lass members' challenges to the amount of their individual awards do not provide any grounds

10   to reject the proposed settlement."). Moreover, Mr. Dickenson himself recognizes that "the full

11   $20.5m settlement amount may represent the best offer," and he acknowledges "the slow nature of

12   the legal process." Shaver Decl. Ex. B at 2. Settlement Class Representatives respectfully submit

13   that Mr. Dickenson's objection actually *supports* final approval: the settlement is potentially the

14   most the Settlement Class could receive for their claims, and it arrives at a time where Settlement

15   Class Members can use much-needed funds to pay for medical care before the lengthy process of

16   trial and subsequent appeals. *See Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 834 (N.D. Cal. 2017)

17   (overruling objections where concerns raised in the objections "reflect the strengths and risks in

18   plaintiff's case").

19       **C.**    **Notice Was Reasonable and Adequate.**

20         In its preliminary approval order, the Court found that "compliance with the procedures

21   described in the Settlement Agreement is the best notice practicable under the circumstances and

22   shall constitute due and sufficient notice to the Settlement Class of the terms of the Settlement

23   Agreement and the Final Approval Hearing." ECF No. 122 at 2. The Court also held that

24   compliance with the notice procedures in the Settlement Agreement satisfy the Federal Rules of

25   Civil Procedure, the United States Constitution, and any other applicable law. *Id.* Finally, the Court

26   approved the proposed Notice that Settlement Class Representatives drafted. *Id.*

27

---

28   [7] Mr. Dickenson references Settlement Class Counsel's request for 30 percent of the Class Settlement Amount in Attorneys' Fees, but he does not object to that requested award. Shaver Decl. Ex. B at 2.

Here, Settlement Class Representatives and the Settlement Administrator have dutifully followed the notice procedures as set forth in the Settlement Agreement. On July 7, 2025, the Settlement Administrator mailed a personalized Notice to every Settlement Class Member using mailing addresses that Save Mart and Settlement Class Representatives provided. Shaver Decl. ¶ 14. That personalized Notice matched the one approved by the Court at the preliminary approval stage, and it included an individualized Settlement Share estimate for the specific Settlement Class Member receiving that Notice. *Id.*; *see also* ECF No. 115-3 at 6 (the Court-approved Notice with a placeholder for Settlement Class Member's individualized Settlement Share estimates). Also on July 7, 2025, the Settlement Administrator emailed the Notice to all Settlement Class Members for whom Settlement Class Representatives or Save Mart had an email address. Shaver Decl. ¶ 15. Throughout the settlement administration process, Settlement Class Representatives and the Settlement Administrator fielded questions from Settlement Class Members. *Id.* ¶ 21. When Settlement Class Members provided updated email or mailing addresses, the Settlement Administrator resent them the Notice. *Id.* ¶ 18. Additionally, when the Settlement Administrator received returned Notices with forwarding addresses, it re-mailed the Notices to those new addresses. *Id.* ¶ 17. Furthermore, when the Settlement Administrator received returned Notices as undeliverable, it performed a skip trace analysis and re-mailed the Notice. *Id.* Finally, when necessary, the Settlement Administrator called the last known telephone numbers of Settlement Class Members (if available) to obtain current addresses. *Id.* ¶ 19. By taking these steps, the Settlement Administrator provided the Notice to all but three Settlement Class Members. *Id.* ¶ 20. The Settlement Administrator also maintains a case-specific website which includes the Notice, important case-related documents (including the Court's preliminary approval order, which states the date of the Final Approval Hearing), and contact information for Settlement Class Members to reach out to the Settlement Administrator with questions about the Notice or settlement. *Id.* ¶ 16.

In addition, the Court approved Supplemental Notice to four Settlement Class members who were inadvertently left off the Settlement Class list, and therefore did not receive the original Notice and had not otherwise reached out to CPT or Settlement Class Counsel. ECF No. 127. Notice to these four individuals was delivered on August 25, 2025, and will continue to be executed in the

same manner as for all other Settlement Class Members. Shaver Decl. ¶ 25. In accordance with the Court's Order, Settlement Class Counsel will file an update with the Court on September 15, 2025 certifying compliance with the Supplemental Notice plan and lodging any opt out requests or objection stemming therefrom. ECF No. 127 at 3.

These procedures follow those in the Settlement Agreement, which the Court previously found were reasonable and adequate. *See* ECF No. 115-2 at 12-14 (the Settlement Agreement's Notice procedure); ECF No. 122 at 2 (approving the Settlement Agreement's Notice procedure). Accordingly, Settlement Class Representatives respectfully submit that they distributed the Notice in a manner "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 779 (9th Cir. 2022); *see also Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1128 (9th Cir. 2017) ("[N]either Rule 23 nor the Due Process Clause requires actual notice to each individual class member.").

## V.    **CONCLUSION**

For the reasons set forth above and in Settlement Class Representatives' Motion for Preliminary Approval, Settlement Class Representatives respectfully request that the Court issue an order: (i) granting final approval of the Settlement Agreement; (ii) confirming certification of the Settlement Class; (iii) confirming appointment of Plaintiffs as Settlement Class Representatives; (iv) confirming appointment of Lieff Cabraser Heimann & Bernstein, LLP; Bolt Keenley Kim LLP; and Matern Law Group P.C. as Settlement Class Counsel; (v) finding Notice to the Settlement Class was directed and completed in a reasonable manner; and (vi) entering final judgment as to Save Mart in this Action.

1    Dated:        August 25, 2025        Respectfully submitted,

2

3                                                      /s/ Anne B. Shaver
                                                      Anne B. Shaver

4                                         Anne B. Shaver (CA Bar No. 255928)

5                                         Michelle A. Lamy (CA Bar No. 308174)
                                          Benjamin A. Trouvais (CA Bar No. 353034)

6                                         LIEFF CABRASER HEIMANN & BERNSTEIN LLP
                                          275 Battery St., 29th Floor

7                                         San Francisco, CA 94111
                                          Phone: (415) 956-1000

8                                         Fax: (415) 956-1008

9                                         James P. Keenley (CA Bar No. 253106)

10                                        Emily A. Bolt (CA Bar No. 253109)
                                          BOLT KEENLEY KIM LLP

11                                        2855 Telegraph Ave., Suite 517
                                          Berkeley, CA 94705

12                                        Phone: (510) 225-0696
                                          Fax: (510) 225-1095

13

14                                        Matthew J. Matern (CA Bar No. 159798)

15                                        Mikael H. Stahle (CA Bar No. 182599)
                                          Erin R. Hutchins (CA Bar No. 346557)

16                                        MATERN LAW GROUP, PC
                                          2101 E. El Segundo Blvd., Suite 403

17                                        El Segundo, CA 90245
                                          Phone: (310) 531-1900

18                                        Fax: (310) 531-1901

19                                        Settlement Class Counsel

20

21

22

23

24

25

26

27

28

PLS.' UNOPPOSED MOT. FOR FINAL APPROVAL
                                          CASE NO. 1:22-CV-4645-RMI